647 A.2d 96

**WORKERS' COMPENSATION COMMISSION**

v.

**Norman DRIVER and Joan N. Parker.**

**Michael ADAMS et al.**

v.

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES et al.**

**Nos. 79, 76, Sept. Term, 1992.**

Court of Appeals of Maryland.

Sept. 9, 1994.

Marlene Trestman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Bruce P. Martin, David R. Durfee, Jr., Julia

M. Freit, Asst. Attys. Gen., all on brief), Baltimore, for petitioner in No. 79.

Barry C. Steel, Towson, for respondent in No. 79.

J. Edward Davis (Davis & Associates and Charles R. Hennick, all on brief), Towson, for petitioner in No. 76.

Marlene Trestman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Bruce P. Martin, David R. Durfee, Jr., Asst. Attys. Gen., all on brief), Baltimore, for respondent in No. 76.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE *, CHASANOW, KARWACKI and BELL, JJ.

ELDRIDGE, Judge.

The issues in these two cases concern the applicability of the statutory provisions governing the layoff of state employees and the reinstatement rights of laid-off employees.

## I.

At the time when the events leading to the present appeals occurred, Maryland Code (1957, 1988 Repl.Vol., 1991 Cum. Supp.), Art. 64A, § 35, provided in subsection (b) as follows:

"§ 35. Laying off employees.

\* \* \* \* \* \*

"(b) *In general.*—Employees who are in positions that are to be abolished, discontinued, or vacated, because of a change in departmental organization or a stoppage or lack of work, shall be laid off."

\* \* \* \* \* \*

Subsection (c) of § 35 required the Secretary of Personnel to promulgate rules and regulations establishing procedures for

---

\* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

the layoff of state employees and the reinstatement of laid-off employees to comparable occupational positions.[1]   Subsection (d) specified various requirements for the Secretary's rules and regulations, including a provision that a laid-off employee may displace another employee with less seniority in the same job classification in the same department.[2]   Section 35(e) stated that the Secretary of Personnel "shall adopt rules and regulations for reinstatement of unclassified employees that are similar to the rules and regulations for reinstatement of classified employees." [3]

The provisions of Art. 64A, § 35, originated with Ch. 41 of the Acts of 1920.   Subsection (b) has remained almost unchanged since 1920, and the subsection (c) requirement of administrative rules for reinstatement has similarly been in the statute from the beginning.   Thus, Code (Bagby, 1924), Art. 64A, § 16, provided as follows:

---

1.  Subsection (c) provided as follows:

"(c) *Secretary to establish procedures.*—Except for faculty and other unclassified employees of the State institutions of higher education and their governing boards, the Secretary of Personnel shall establish uniform procedures among State agencies, by rule and regulation, for:

(1) The layoff of State employees regardless of employment status; and

(2) The reinstatement of laid-off classified and unclassified State employees to comparable occupational positions in State employment."

2.  Subsection (d) provided as follows:

"(d) *Rules and regulations; classified employees.*—The rules and regulations promulgated by the Secretary pursuant to subsection (c) of this section shall include:

(1) An order of layoff determined by seniority points, including credit for:

(i) Total State service;

(ii) Service within the department where the layoff is to occur;  and

(iii) Service in the job classification and its job series, as defined by the Secretary, where the layoff is to occur."

3.  As a result of recodification by Ch. 10 of the Acts of 1993, the provisions of former Article 64A, § 35, are now found in Code (1993), §§ 9–501 through 9–506 of the State Personnel and Pensions Article. We shall in this opinion, however, refer to Art. 64A, § 35, because § 35 was in effect when the events pertinent to these cases took place.

"**16.** An employee in a position that is to be abolished, discontinued, or vacated, because of change in departmental organization, or through stoppage or lack of work, shall be laid off and his name placed, in the order provided in the rules of the [State Employment] Commissioner, on the eligible list for the class of the position from which he was laid off."

In *Hopper v. Jones*, 178 Md. 429, 13 A.2d 621 (1940), this Court construed Art. 64A, § 16, holding that the statute does not apply when the enacted budget bill deleted the appropriation for a specific position. The facts of *Hopper* were as follows. For the fiscal year ending September 30, 1939, the claim staff of the State Accident Fund consisted of five investigators with the following annual salaries: $2,200, $2,200, $2,000, $1,800, and $1,500. The plaintiff Hopper was employed as one of the five investigators, being paid the $1,500 annual salary. The investigator in charge testified that the " 'duties that the investigators perform are all different, one from another.' " 178 Md. at 432, 13 A.2d at 622. The budget bill for the fiscal year 1940, as enacted by the General Assembly in 1939, contained appropriations for only four investigators with annual salaries of $2,200, $2,200, $2,000, $1,800. *See* Ch. 284 of the Acts of 1939, at 540–541.[4] At the beginning of the new fiscal year, the State Employment Commissioner issued an order "laying off" Hopper because the Legislature made no appropriation for his salary. Hopper then filed in the Baltimore City Court a petition for a writ of mandamus against the Commissioner, seeking rescission of the lay-off order and reinstatement to one of the investigator positions.

---

**4.** Actually, the General Assembly itself did not delete the $1,500 position. Instead, under Maryland's executive budget system, the position was deleted by the Governor when he submitted the budget bill for fiscal year 1940. *See* Ch. 284 of the Acts of 1939, at 541, items 10, 13, 14, and 15. Moreover, the $1,500 position was apparently suggested for elimination by the State Accident Fund when it submitted its budget requests to the Governor. *See Records And Briefs In The Court of Appeals of Maryland,* April Term 1940, No. 39, Brief for the Appellee at 5.

Hopper contended that the Commissioner's action was inconsistent with Art. 64A, § 16, and with the Commissioner's rules and regulations adopted pursuant to § 16. According to Hopper, his position as an investigator had been "abolished ... because of change in departmental organization, or through stoppage or lack of work" within the meaning of Art. 64A, § 16, and therefore he was entitled to the protection of the merit system rules promulgated by the Commissioner. Under those rules, when positions were abolished, the appointing authority was required to lay off those employees having the lowest "service ratings." The investigator among the five who had the lowest service rating was investigator Griebel who occupied the $1,800 per year position. Hopper argued that investigator Griebel should be laid off and that Hopper should be reinstated to the $1,800 position. The trial court dismissed Hopper's mandamus petition, and the Court of Appeals affirmed. This Court indicated that, if the purpose of the enacted budget were simply to abolish any one of the five positions, rather than a specific position, and if the choice of which position to abolish were for the agency, then Art. 64A, § 16, and the rules pursuant to that section, would have been applicable and Hopper would prevail. 178 Md. at 431, 13 A.2d at 622. In the Court's view, however, the purpose of the enacted budget was to abolish the specific position held by Hopper, because of the different salaries and the designation of the $1,500 position for deletion. 178 Md. at 431–432, 13 A.2d at 622. The Court held that Hopper's position was abolished "by operation of law," and that such action was not within Art. 64A, § 16. The Court stated (178 Md. at 433, 13 A.2d at 623):

> "Our conclusion is that since the Legislature has discontinued the appropriation for an annual salary of $1500 for an industrial accident investigator, and the appellant was the only investigator receiving that salary, he lost his position by operation of law."

The administrative rules and regulations adopted pursuant to the statute have changed somewhat since the decision in the *Hopper* case. Nevertheless, as previously discussed, the stat-

utory provision construed in *Hopper* remained virtually unchanged.

## II.

As this opinion resolves two separate cases, we shall separately set forth the facts of each case.

### A. *No. 79, Workers' Compensation Commission v. Driver and Parker*

Prior to July 1, 1991, Norman Driver held the position of Chief of the Hearing Division for the Workers' Compensation Commission. Also prior to July 1, 1991, Joan Parker held the position of Administrator III with the Commission, at the annual salary of $44,350. She was the only Administrator III at that salary. The budget bill for fiscal year 1992, beginning July 1, 1991, as submitted by the Governor to the General Assembly, retained the positions of both Mr. Driver and Ms. Parker.

During the 1991 legislative session, the House Appropriations Committee's staff indicated to the Workers' Compensation Commission that the staff intended to recommend the deletion of five "lower level" positions from the portion of the budget applicable to the Commission. The Chairman of the Commission responded by opposing the deletion of any positions. Alternatively, the Chairman urged that if Commission positions were to be eliminated by the General Assembly, the Commission would recommend the deletion of Mr. Driver's and Ms. Parker's positions rather than the five lower level positions suggested by the Committee's staff. Subsequently, the House Appropriations Committee and the Senate Budget and Taxation Committee recommended to the entire General Assembly the deletion of Mr. Driver's and Ms. Parker's positions. The General Assembly passed the budget bill for the fiscal year beginning July 1, 1991, with Mr. Driver's and Ms. Parker's positions abolished.

Both Mr. Driver and Ms. Parker were denied layoff and reinstatement rights pursuant to Art. 64A, § 35, and the

administrative rules promulgated under the statute. The two employees filed grievances and pursued their cases through the State Employees' Grievance Procedure, culminating in hearings before Administrative Law Judges. In both cases, the Administrative Law Judges issued opinions holding that *Hopper v. Jones, supra,* was dispositive. Because each position was specifically eliminated by the budget enacted by the General Assembly, the Administrative Law Judges held that Mr. Driver and Ms. Parker had no layoff and reinstatement rights under Article 64A, § 35. Both grievances were "denied and dismissed."

The two employees filed in the Circuit Court for Baltimore County an action for judicial review, and the cases were consolidated for purposes of hearing and decision. Thereafter the circuit court rendered an opinion and order which reversed the administrative decisions and remanded the cases for further proceedings. The circuit court found a critical factual distinction between the present cases and *Hopper v. Jones, supra,* saying:

"This Court finds an important distinction between the instant case and *Hopper. Hopper* involves the application of a lay off statute analogous to Article 64, Section 35. The lay off provisions provided for benefits based upon performance evaluation. In *Hopper,* the legislature was the sole basis for the abolition of the subject employee's position, which was identified by salary, and did not receive appropriation for the budget year. The employee was deemed to be laid off by 'an act of law and denied lay off benefits.' In *Hopper,* there were no facts indicating that the department had any input into the legislature's act.... Under the instant facts, the Workers' Compensation Commission, through its Chairman, Charles Krysiak, recommended that if positions were to be abolished (which the department opposed in general), that *not* the legislative selection but the department's choice should be followed. The legislative act was not the sole basis for abolition of positions. *Hopper* is therefore distinguishable on significant facts."

"Our facts involve the implementation by the legislature of the department's choice of which positions to abolish for reasons that Chairman Krysiak explained and are noted several times in the record. The act of the legislature *and* the department combine to form the basis of the abolition of the loss of the appellants' positions and this is well documented."

\* \* \* \* \* \*

"This Court cannot conclude that the legislature acted independently of the agency which, 'in substance,' performed a departmental reorganizing in advance of the Budget Act which 'in form' eliminated the positions. This Court prefers substance over form as this Court is certain the legislature would have intended. The legislature cannot be allowed to perform an 'end run' around the statute which it enacted to confer benefits on senior employees which the legislature has expressed its intention to support."

The circuit court went on to hold that, if Art. 64A, § 35, were interpreted as inapplicable in this situation, such interpretation would result "in denying similarly situated groups of employees the equal protection of the law without a rational basis in contravention of Article 24 of the Maryland [Declaration of Rights] and the 14th Amendment of the United States Constitution . . . ." The circuit court concluded that, because of the Commission's recommendation to the House Appropriations Committee, "the positions of appellants were abolished by department organization, and the appellants are entitled to be laid off under Art. 64A, § 35."

The Commission took an appeal to the Court of Special Appeals. Prior to any further proceedings in the intermediate appellate court, the parties filed in this Court a joint petition for a writ of certiorari which we granted.

In this Court, the thrust of the two employees' argument is that *Hopper v. Jones, supra,* is not controlling because today, under Art. 64A, § 35(d), and the administrative rules and regulations, the layoff and reinstatement rights of employees are different than they were when *Hopper* was decided. Mr.

Driver and Ms. Parker also argue that, to deny them layoff and reinstatement rights under Art. 64A, § 35, while granting such rights to employees whose jobs are abolished by departmental reorganizations, would violate constitutional equal protection principles.

### B. *No. 76, Adams et al. v. Department of Public Safety and Correctional Services, et al.*

Code (1985, 1988 Repl.Vol.), § 7–213 of the State Finance and Procurement Article authorizes the Governor, with the approval of the Board of Public Works, to reduce, by not more than 25%, any appropriation that the Governor deems unnecessary.[5] For a discussion of the history and purpose of this statute, see *Judy v. Schaefer*, 331 Md. 239, 627 A.2d 1039 (1993).

On October 23, 1991, because of a shortfall in state government revenues and to avoid a deficit, the Governor, with the approval of the Board of Public Works, signed orders pursuant to § 7–213 to reduce appropriations. Included among the reductions was the total abolition of more than 1500 employee positions in several state departments and agencies. Each position abolished was individually identified by PIN number (personal identification number).

---

5. The statute reads as follows:

"**§ 7–213. Reductions.**

(a) *Authorized.*—Except as provided in subsection (b) of this section, with the approval of the Board of Public Works, the Governor may reduce, by not more than 25%, any appropriation that the Governor considers unnecessary.

(b) *Exclusions.*—(1) The Governor may not reduce an appropriation to the Legislative Branch or the Judicial Branch of the State government.

(2) The Governor may not reduce an appropriation for:

(i) payment of the principal of or interest on the State debt;

(ii) public schools; or

(iii) the salary of a public officer, during the term of office.

(3) Except as provided in the Merit System Law, the Governor may not reduce an appropriation for the salary of an employee in the classified or unclassified service."

The selection of the positions to be abolished had been based on the recommendations of the departments and agencies involved. Thus, when the Governor reached the conclusion that the abolition of state employment positions was necessary because of the fiscal emergency, the Secretary of Budget and Fiscal Planning, acting upon the Governor's direction, requested various state departments and agencies to submit recommendations of specific positions to be abolished, listed by PIN number, class code and position title. The Governor's order abolished the positions recommended by the departments and agencies.

Michael Adams and 32 other persons involved in this case had been employed in various state departments and agencies. Their positions had been specifically abolished by the Governor's order of October 23, 1991, and they were denied layoff and reinstatement rights pursuant to Art. 64A, § 35. They filed grievances, took the appropriate actions under the State Employees' Grievance Procedures, and finally had a hearing, extending over several days, before an Administrative Law Judge. Before the Administrative Law Judge, the grievants were "basically not contesting the Governor's action or the approval of the Board of Public Works." Their position was essentially that, once the Governor decided upon the abolition of the positions, the provisions of Art. 64A, § 35, and the administrative rules pursuant thereto, should determine which employees actually lost their jobs. The various state departments and agencies, represented by the Attorney General, argued that *Hopper v. Jones, supra,* was controlling.

The Administrative Law Judge, in an extensive opinion, decided that the "[g]rievants are entitled to rights afforded under the layoff statute, Md.Ann.Code, Art. 64A, § 35." Like the circuit court in the *Driver and Parker* cases, the Administrative Law Judge in *Adams* placed much weight on the fact that the recommendations of the agencies were accepted, stating:

"The State, on the other hand, contends that it was the appropriation reduction pursuant to § 7–213 which mandated the abolition of jobs. The State's position is that Section

7–213 is not a personnel rule, regulation or policy over which 'management' had control. While it is true that the appropriation reduction was predicated on § 7–213, it is equally apparent that the various agencies, upon request, submitted the information to the Governor identifying which jobs had been selected for abolition. It was this submission of information which dictated which jobs were abolished. The Governor and the Board of Public Works did not randomly select Position Identification Numbers (PINs) but were supplied that information from the agencies. Since it was that information and that information alone which dictated which positions were abolished, it must be concluded that management exercised control over that decision. Management may not have had control over the fact that such reductions were necessary but they certainly maintained total control over selecting which positions were ultimately abolished.

"In light of the above, the response to the question "Who did wrong?" must be "The various appointing authorities." As stated earlier, the Grievants' cause of complaint is aimed directly at the actions of the appointing authorities, not that of the Governor or Board of Public Works."

The Administrative Law Judge distinguished *Hopper v. Jones, supra,* as follows:

"Thus, § 7–213, as did its predecessor, authorizes the Governor to reduce appropriations after the enactment of the budget bill. Such action by the Governor with the Board of Public Works' approval is not comparable to what occurred in *Hopper.* In *Hopper,* the Governor's action or inaction eventually became law. In the instant grievances, the reduction in appropriation did not create or change any laws. Neither is the action an amendment to the budget as defined in § 7–209. The Governor with the approval of the Board of Public Works administered a law, Section 7–213. The result was a reduction in appropriations which limited the spending of specified agencies. Such action was a ministerial function, not a legislative act.

"Thus, by examining the function being performed by the Governor and Board of Public Works as it relates to § 7–213, it is clear that such action is executive, not legislative. Accordingly, any results from exercising that function, such as job abolishment, are not legislative in nature. If the results are not legislative, then it cannot be concluded that the job abolitions were by operation of law."

The various state departments and agencies filed an action for judicial review in the Circuit Court for Anne Arundel County. The circuit court reversed, holding that the positions were abolished by operation of law, that *Hopper v. Jones* was controlling, and that, therefore, the employees were not entitled to layoff and reinstatement rights under Art. 64A, § 35.

The employees noted an appeal to the Court of Special Appeals. Prior to the filing of briefs and oral argument in the intermediate appellate court, they filed in this Court a petition for a writ of certiorari which we granted. In arguing that they were entitled to layoff and reinstatement rights under Art. 64A, § 35, and that the Administrative Law Judge properly accorded them relief in a grievance proceeding, the employees place much weight upon the fact that the positions abolished were those recommended for abolition by the heads of various state departments and agencies. They assert that "[i]t was the management of the various agencies who made the decisions as to which positions would be abolished" (appellants' brief at 6) and that the "dispositive choices were made by those at the agency level regarding which employees would be laid off by the [Governor and the] Board on October 23" (appellants' brief at 8). The employees go on to argue that "[t]here is no express or implied exception in § 35 which eliminates its protection when positions are abolished by agencies under the direction of the Governor and the Board of Public Works" (*id.* at 13). The holding in *Hopper v. Jones,* according to the employees, is limited to "legislative actions." They state that, although the "Governor's budget formulation prior to the passage of the budget by the General Assembly may be seen as somewhat quasi-legislative," nevertheless the

"Governor's actions pursuant to statute, taken after the passage of the budget, are not" (*id.* at 19).

## III.

The circuit court in *Driver and Parker,* and both the Administrative Law Judge and the employees in *Adams,* have viewed the abolition of the various positions involved largely as actions taken by the administrative departments and agencies rather than actions taken by the General Assembly in *Driver and Parker* and the Governor in *Adams.* This is because the departments and agencies made recommendations to the decision makers which the latter decided to follow.

■ In our view, however, the decision to delete from the budget bill the appropriations for Mr. Driver's and Ms. Parker's positions must be treated wholly as the decision of the General Assembly. Similarly, the decision to abolish the positions involved in the *Adams* case was entirely that of the Governor, approved by the Board of Public Works. That the Legislature or the Governor, in performing their official functions under the law, may have been influenced or motivated, in whole or in part, by recommendations of agencies or of other entities or persons, is irrelevant.

[2] It is well-settled that when the judiciary reviews a statute or other governmental enactment, either for validity or to determine the legal effect of the enactment in a particular situation, the judiciary is ordinarily not concerned with whatever may have motivated the legislative body or other governmental actor. Long ago, in *Mayor, etc., of Balto. v. State,* 15 Md. 376, 461 (1859), this Court stated:

"Hence we see that while the motives of the Legislature can have no effect upon the efficiency of the laws, neither can they be regarded by the judiciary when testing their power to pass them."

*See also* 15 Md. at 482.

The Supreme Court of the United States in *Daniel v. Family Security Life Ins. Co.,* 336 U.S. 220, 224, 69 S.Ct. 550,

552, 93 L.Ed. 632, 636 (1949), with respect to the argument that recommendations from the "insurance lobby" influenced the South Carolina legislature to enact the statute there involved, stated:

> "But a judiciary must judge by results, not by the varied factors which may have determined legislators' votes. We cannot undertake a search for motive...."

■ Therefore, except to the extent that a governmental body's motive may cast light upon the meaning of its enactment, its motive is ordinarily not pertinent in applying that enactment. That the General Assembly and the Governor may have been motivated by recommendations from state agencies can have no relevance in determining the effects of their official actions.

Under Article III, § 52, of the Maryland Constitution, the General Assembly, and only the General Assembly, can enact the annual budget for the State. Under § 7–213 of the State Finance and Procurement Article, the Governor, and only the Governor, can reduce appropriations in the budget up to 25% after the budget has been enacted. These official actions did not become the actions of state agencies because the General Assembly and the Governor received recommendations from those agencies and decided to follow them. The making of recommendations did not convert the state agencies into decision makers. *See, e.g., People of Virgin Islands v. Price*, 181 F.2d 394, 396 (3d Cir.1950) ("To recommend is to present as one's advice.... It ordinarily involves the idea that another has the final decision"); *Fletcher v. Porter*, 203 Cal.App.2d 313, 317, 21 Cal.Rptr. 452, 454 (1962) ("To recommend does not mean to bind"); *Mora County Board of Education v. Valdez*, 61 N.M. 361, 366, 300 P.2d 943, 946 (1956) ("A recommendation is not an act of final decisive power—it merely suggests the desirability of a course of action to be followed by another"). *See also Duffy v. Conaway*, 295 Md. 242, 259, 261–262, 455 A.2d 955, 963–965 (1983).

Since Mr. Driver's and Ms. Parker's positions were abolished by the enacted budget bill, and not by the agency for

which they were employed, our decision in *Hopper v. Jones* is clearly dispositive in their cases.[6]

Mr. Driver and Ms. Parker suggest that *Hopper* is distinguishable because, today, employees have somewhat different layoff and reinstatement rights than they did at the time of *Hopper*. Today layoff and reinstatement rights largely depend upon seniority, whereas at the time of *Hopper* they depended upon "service ratings." Nonetheless, as earlier discussed, the key statutory provision did not change since the *Hopper* case. Whatever the layoff and reinstatement rights may be under Article 64A, § 35(d), and the administrative rules promulgated thereunder, those rights only come into being when employees "are in positions that are to be abolished, discontinued, or vacated, because of a change in departmental organization" within the meaning of § 35(b). This language in § 35(b) is identical to the language of former Art. 64A, § 16, which was construed in *Hopper*. The *Hopper* opinion indicated that the language encompassed the abolition of a position by the agency itself or by the budget process when jobs were reduced without targeting specific positions, but that the language did not cover the total removal of funding for the specific position in the state budget. This interpretation of the language is controlling under the principle of stare decisis.

Moreover, the *Driver and Parker* cases present circumstances under which a court should rarely depart from the rule of stare decisis. The provisions of former Article 64A, § 16, and Article 64A, § 35, have been reenacted with amendments on several occasions since this Court's opinion in *Hopper v. Jones*. Nevertheless, from the time of *Hopper* through the period when the present cases arose, the General Assembly did not change the particular language construed in *Hopper*. In this situation, a court should be most reluctant to overrule its prior interpretation of the statutory language.

---

**6.** It is noteworthy that the agency's recommendation in the *Hopper* case apparently contributed to the final decision to as great a degree as the agency's recommendation in *Driver and Parker*. *See* n. 4, supra.

We explained in *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981):

"The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation. *Harden v. Mass Transit Adm.,* 277 Md. 399, 406, 354 A.2d 817 (1976). This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue. *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 322–323, 407 A.2d 738 (1979); *Director v. Cash,* 269 Md. 331, 345, 305 A.2d 833 (1973) *cert. denied sub nom. Vucci v. Boslow, Institution Director,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974); *Macke Co. v. St. Dep't of Assess. & T.,* 264 Md. 121, 132–133, 285 A.2d 593 (1972); *Stack v. Marney,* 252 Md. 43, 49, 248 A.2d 880 (1969). Under these circumstances, it is particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the statute. *White v. Prince George's Co.,* 282 Md. 641, 657–658, 387 A.2d 260 (1978). *See also Flood v. Kuhn,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972)."

*See, e.g., United States v. Streidel,* 329 Md. 533, 551 n. 12, 620 A.2d 905, 914 n. 12 (1993); *Forbes v. State,* 324 Md. 335, 342, 597 A.2d 427, 431 (1991); *Nationwide v. USF & G,* 314 Md. 131, 143, 550 A.2d 69, 75 (1988); *Frank v. Storer,* 308 Md. 194, 203, 517 A.2d 1098, 1102–1103 (1986); *Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 60, 507 A.2d 172, 178 (1986); *Foster v. State,* 304 Md. 439, 479–480 n. 20, 499 A.2d 1236, 1257 n. 20 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Calhoun v. State,* 299 Md. 1, 11, 472 A.2d 436, 441 (1984).

The *Adams* case, of course, is somewhat different from *Hopper.* Whereas in *Hopper* the Governor made the decision to delete the annual appropriation for Mr. Hopper's position prior to submitting the budget bill to the General Assembly, and thus under Maryland's executive budget system the ap-

propriation was deleted by the enacted budget bill, in *Adams* the Governor made the decisions to delete the annual appropriations for the positions after the budget bill was passed and pursuant to § 7–213 of the State Finance and Procurement Article.

Nonetheless, as recently discussed in *Judy v. Schaefer*, *supra*, 331 Md. at 258–261, 269, 627 A.2d at 1049–1050, § 7–213 was enacted pursuant to the constitutional budget provisions, Article III, § 52, of the Constitution, and particularly § 52(13). It is a "necessary and proper" statute "for the [budget] process to function." *Judy*, 331 Md. at 258, 627 A.2d at 1049. In *Judy*, this Court specifically analogized the Governor's authority under § 7–213 to his authority under Article III, § 52, to reduce appropriations upon the submission of the budget bill, saying (331 Md. at 259–260, 627 A.2d at 1049–1050):

> "The authority given to the Governor in § 7–213 corresponds to the power vested in the Governor by Art. III, § 52. Section 7–213 merely allows the Governor to accomplish at the end of the budget process what he is required to do when he submits his initial budget. If the revenue estimates for FY 1993 had been accurate at the time the budget bill was being prepared for submission to the General Assembly, the Governor would have been required to impose the reductions at that juncture. The revenue estimates for FY 1993 turned out to be inaccurate after the enactment of the budget bill, just as they turned out to be inaccurate in the 1930's. The General Assembly, well aware of the problem in the 1930's and the possibility of its recurrence, enacted § 7–213 in 1939 in order to forestall the accumulation of deficits in subsequent fiscal years.
>
> Section 7–213 comports with Art. III, § 52, because the statute recognizes and perpetuates the preeminent role of the Governor in the budget process.... Furthermore, because § 7–213 furthers the requirement of maintaining a balanced budget throughout the fiscal year, it is precisely the type of legislation which the framers of Art. III, § 52, contemplated."

Later we reiterated that "the authority of the Governor in § 7–213 mirrors the authority of the Governor in § 52 of Art. III" (331 Md. at 261, 627 A.2d at 1050) and that (331 Md. at 269, 627 A.2d at 1054–1055)

> "[s]ection 7–213 provides a mechanism by which the Governor can fulfill his constitutional obligation to maintain a balanced budget and to avoid a deficit when the estimated revenues used in the budget bill are too high. The power of the Governor to reduce appropriations under § 7–213 is consistent with the power of the Governor in the budgetary process, and, as proven in 1933 and 1935 as well as in the 1990's, is "necessary . . . to carry out" the balanced budget requirement of Art. III, sec. 52(5a)."

In both *Adams* and *Hopper,* the appropriations for the positions were abolished by the Governor, acting pursuant to the constitutional budget process. Under Maryland's executive budget system, the Governor's decisions in both cases were legislative-type acts. The positions were not abolished by the agencies themselves, as part of a departmental reorganization by the agencies. Instead, in both cases, the annual budget process, accomplished by the Governor and General Assembly together, operated to delete the funding for specific positions. Consequently, we believe that the *Hopper* opinion is controlling in the *Adams* case.

█ Finally, we do not believe that there is any merit in the equal protection of the laws argument raised in the *Driver and Parker* cases. The Legislature may decide to grant layoff and reinstatement rights under certain circumstances without having to grant the same rights under all circumstances. *See U.S.R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 177, 101 S.Ct. 453, 460, 66 L.Ed.2d 368, 377 (1980) ("Because Congress could have eliminated windfall benefits for all classes of employees, it is not constitutionally impermissible for Congress to have drawn lines between groups of employees for the purpose of phasing out those benefits"). *See also Hargrove v. Board of Trustees,* 310 Md. 406, 424–425, 529 A.2d 1372, 1381 (1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 766

(1988). It is not irrational to treat differently the situation where the funding for a specific position is abolished by the Governor and General Assembly through the budget process.[7]

*IN NO. 79, JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED, AND CASE REMANDED TO THAT COURT FOR ENTRY OF JUDGMENT AFFIRMING THE DECISIONS OF THE ADMINISTRATIVE LAW JUDGES. APPELLEES TO PAY COSTS.*

*IN NO. 76, JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. APPELLANTS TO PAY COSTS.*

---

7. Subsequent to the events in these cases, the General Assembly, by Ch. 62 of the Acts of 1992, § 6, at 1150–1151, "[t]o clarify interpretation of existing law," expressly stated that the provisions of Art. 64A, § 35, were inapplicable when positions are deleted by the enacted budget bill or by the Governor's action under § 7–213 of the State Finance and Procurement Article. *See also* Code (1993), § 9–501(c) of the State Personnel and Pensions Article.

The parties have in their briefs devoted considerable space to the effect, if any, the new statute may have on the issues here. We need not explore this matter, however, as we have decided the present cases without regard to the new statutory provisions.