833 A.2d 551

Michael V. SEIPP

v.

BALTIMORE CITY BOARD OF ELECTIONS, et al.

No. 145, Sept. Term, 2002.

Court of Appeals of Maryland.

Oct. 10, 2003.

Richard D. Rosenthal (Tydings & Rosenberg, LLP, Baltimore, on brief), for appellant.

Michael D. Berman, Deputy Chief of Litigation (J. Joseph Curran, Jr., Atty Gen., William R. Varga, Asst. Atty. Gen., on brief), Thurman W. Zollicoffer, Jr., City Solicitor, David E. Ralph, Chief Solicitor, Ernest A. Crofoot, Chief Solicitor, on brief, for appellees.

Submitted before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, J.

In November, 2004, a general election will be held in Baltimore City for certain local offices, including the offices of Mayor and members of the City Council. The primary elections, to select nominees of the Democratic and Republican parties for those offices occurred on September 9, 2003— fourteen months prior to the general election. On June 18, 2003, appellant, Michael Seipp, filed the necessary documents to appear in the Democratic party primary election as a candidate for City Council from the 11th councilmanic district of Baltimore City. On July 17, the Baltimore City Board of Elections informed him that, because he had failed to file a required financial disclosure statement by July 10, 2003, he was disqualified as a candidate and that, accordingly, his name would not appear on the primary election ballot.

Seipp promptly filed this action in the Circuit Court for Baltimore City, complaining that the ordinance purporting to authorize the Board to disqualify him as a candidate, or to deem his candidacy as having been withdrawn, was invalid. He sought declaratory, injunctive, and mandamus relief, all designed to preclude the Board from removing his name from the ballot. His principal argument was that the City law was not in conformance with the mandate of State law that the City financial disclosure law be "similar" to the State financial disclosure law. Declaring that the City law *was* "similar" to the State law and was therefore valid, the court, on July 25, entered judgment denying relief. Seipp appealed. We granted *certiorari* prior to proceedings in the Court of Special Appeals and, on July 30, 2003, entered a brief *per curiam* order reversing the Circuit Court judgment and directing that court to order the Board of Elections to place Seipp's name on the primary ballot. We now explain our reasons for that order.

The General Assembly has enacted a comprehensive State Ethics Law, which now appears in Maryland Code, Title 15 of the State Government Article. The substantive provisions of that law cover three areas—conflict of interests (subtitle 5),

financial disclosure (subtitle 6), and lobbying (subtitle 7). Those provisions apply to officials and employees of the State government and to persons who engage in lobbying activities with the legislative or executive branches of the State government. Administration of the law is vested in the State Ethics Commission, which is created and provided for in subtitle 2.

Many of the substantive provisions in those subtitles deal specifically with or have particular relevance to State agencies and to people who do business with State agencies, thus making their direct application to local governments and officials impractical. The General Assembly clearly desired that local officials and employees be subject to a comparable code, but, in lieu of attempting to legislate a single or separate codes of ethics for the wide variety of county and municipal officials, it opted instead to mandate that (1) the local governments enact their own local legislation in those areas, but (2) the local legislation be similar to the State requirements. That mandate appears in subtitle 8. The State law was to be a template for the local legislation.

Section 15–803, a general provision, requires each county and municipal corporation to "enact provisions to govern the public ethics of local officials relating to: (1) conflicts of interest; (2) financial disclosure; and (3) lobbying." Sections 15–804, 15–805, and 15–806 deal, respectively, with the three substantive areas covered by the State law. Section 15–804 requires that the conflict of interests provisions enacted by a local government under § 15–803 be "similar to the provisions of Subtitle 5 of this title, but may be modified to the extent necessary to make the provisions relevant to the prevention of conflicts of interest in that jurisdiction."

Section 15–805 deals with financial disclosure and is the section most relevant to this case. In relevant part, it provides as follows:

"(b) Except as provided in subsection (c) of this section, the financial disclosure provisions enacted by a county or municipal corporation under § 15–803 of this subtitle shall be similar to the provisions of Subtitle 6 of this title, but shall

be modified to the extent necessary to make the provisions relevant to the prevention of conflicts of interest in that jurisdiction.

(c) (1) This subtitle does not compel the governing body of a county or municipal corporation to require a local official to file a financial disclosure statement except:

(i) when the personal interest of the local official will present a potential conflict with the public interest in connection with an anticipated public action of the local official; and

(ii) at least annually to report on gifts received by the local official.

(2) The provisions shall require that a statement filed under paragraph (1)(i) of this subsection be filed sufficiently in advance of the action to provide adequate disclosure to the public.

(d) Financial disclosure provisions applicable to a candidate shall be consistent with the provisions applicable to an incumbent holding the office involved."

Section 15–806, which deals with lobbying, is consistent with §§ 15–804 and 15–805. It provides that the lobbying provisions enacted by a county or municipal corporation shall be "substantially similar to the provisions of Subtitle 7 of this title, but: (1) shall be modified to the extent necessary to make the provisions relevant to that jurisdiction; and (2) may be further modified to the extent considered necessary and appropriate by and for that jurisdiction."

In order to assist the local governments in complying with the statutory mandate, § 15–205(b) requires the State Ethics Commission to adopt, by regulation, "model provisions for local governments that relate to" the three substantive areas-conflict of interests, financial disclosure, and regulation of lobbying. Model provisions adopted by the Commission may be "(i) adopted by any local jurisdiction; or (ii) in accordance with Subtitle 8 of this title, imposed on a local jurisdiction." § 15–205(b)(2). Section 15–808 provides that, if the State Ethics Commission determines that a county or municipal

corporation has not complied with the applicable requirements of the subtitle, it may petition a circuit court for appropriate relief to compel compliance, and that the court may grant any available equitable relief.

As the issue before us focuses on whether the financial disclosure law enacted by the City is sufficiently "similar" to the State financial disclosure law to pass muster, we need to examine the two sets of laws, beginning with the State law.

With exceptions not relevant here, § 15–601(a) requires each official and each candidate for office as an official to file a statement as specified in §§ 15–602 through 15–608. The statement is to be filed with the State Ethics Commission, under oath, by April 30 of each year. § 15–602. It is to cover the calendar year immediately preceding the year of filing and contain the information required in § 15–607. *Id.* Section 15–605 deals specifically with candidates for elective office. If a candidate is required by § 15–601 to file a statement, the statement must be filed each year, beginning with the year in which the candidate filed a certificate of candidacy and extending through the year of the election (except for a year for which the person has already filed such a statement). The statement is to be filed with the election board with which the certificate of candidacy is required to be filed. §§ 15–605(a),(b) and (c). The particularly relevant provisions of § 15–605 appear in subsections (d) through (f), which are as follows:

"(d) (1) The first statement required under this section shall be filed no later than the filing of the certificate of candidacy.

(2) In the year of the election the statement shall be filed on or before the earlier of:

(i) April 30; or

(ii) the last day for the withdrawal of a candidacy under § 5–502 of the Election Law Article.

(e) *If a statement required by this section is overdue and is not filed within 20 days after the candidate receives from the election board written notice of the failure to file, the candidate is deemed to have withdrawn the candidacy.*

(f) (1) An election board may not accept a certificate of candidacy or certificate of nomination of a candidate covered by this section unless the candidate has filed a statement required by this section or § 15–602 of this subtitle.

(2) An election board, within 30 days after receiving a statement, shall forward the statement to the Ethics Commission."

(Emphasis added).

The clear construct of those provisions is that a person seeking a State elective office must file the required financial disclosure statement at or before the time the person files a certificate of candidacy. Unless such a statement is filed by then, the election board may not accept the certificate of candidacy, and the person therefore never gets to be a candidate. Subsections (a), (d)(2), and (e) recognize that the election (and conceivably the last date for withdrawing a candidacy) may be in a year subsequent to the year in which the certificate of candidacy is filed, and they require that the candidate file additional statements for those subsequent years. If a required subsequent statement is not filed within the time allowed by subsection (d)(2), the election board must give written notice of the delinquency, and, if the candidate fails to file the statement within 20 days after receipt of that written notice, he/she is deemed to have withdrawn the candidacy. § 15–605(e). Unless the first statement is timely filed, of course, the person never gets to that point, as there would be no candidacy to be withdrawn.

In conformance with the direction in § 15–205(b), the State Ethics Commission adopted, by regulation, both a model local law and criteria for review by the Commission of whether a local law complies with the statutory mandate. See COMAR 19A.04.01 and .02 and Appendices A and B thereto. Although § 19A.04.01.03 states that the model law set forth in those appendices should be viewed as "information and examples only," it also states that Appendix A "follows very closely the provisions of the Public Ethics Law and should be viewed as a guide for larger counties and municipalities." Appendix B

was designed as a guide for smaller counties and municipalities.

The model law set forth in Appendix A covers the three basic areas-conflict of interests, financial disclosure, and lobbying. The provisions dealing with all three are geared to the kinds of relationships that local officials may have and to dealings with persons who do business with the local government, rather than the State. The substantive provisions, however, are much the same as the State law. That is particularly true with respect to the financial disclosure statements required of candidates. In relevant part, § 6(b)(II) of the model law adopted by the Commission states:

"[E]ach candidate for nomination for, or election to, an office as an official ... shall file under oath or affirmation with the [City] Clerk or Board of Election Supervisors, *together with his certificate of candidacy,* the statement required by this section, for the calendar year immediately preceding. If the certificate of candidacy is filed before January 1 of the year in which the election is held, the candidate, on or before the last day for the withdrawal of candidacy, shall file under oath or affirmation a supplementary statement for the calendar year immediately preceding the election, and if he fails to do so, after written notice of his obligation, given at least 20 days before the last day for the withdrawal of candidacy, he shall be deemed to have withdrawn his candidacy. The [City] Clerk or Board of Election Supervisors may not accept any certificate of nomination unless a statement in proper form has been filed ..."

(Emphasis added).

The Baltimore City ethics law is found in Article 8 of the Baltimore City Code. It covers conflict of interests, financial disclosure, and lobbying. Section 5-2(a) requires candidates for City Council to file a financial disclosure statement. Section 5-3 sets out a very different time schedule and delinquency procedure, however. Section 5-3(d)(1) provides, in relevant part, that "[i]n the year of a mayoral election, on or before the last day ... for the withdrawal of candidacy for nomination,

each elected official and each candidate for an elective office specified in § 5–2 shall file a statement pursuant to this subtitle covering the calendar year immediately preceding the year in which the election is held."[1]  If elected, the candidate must file a statement covering the *fiscal* year immediately preceding the year in which the election is held. § 5–3(d)(3). Section 5–3(f)—the compliance provision—states:

> "At the time of the candidate's filing of the candidate's certificate of candidacy, the Election Board shall issue written notice to the candidate of the candidate's obligation to file the statement required by this subtitle, and, if the candidate fails to do so, the candidate shall be considered to have withdrawn his or her candidacy."

As we indicated, Seipp filed his certificate of candidacy on June 18, 2003.  He did not file a financial disclosure statement at that time, presumably because the City law did not require him to do so.  Had the State law been applicable, the Board of Elections would not, and could not, have accepted his certificate of candidacy and, unless he made a subsequent timely filing, that would have ended the matter.  Section 5–3(f) requires the Board, upon the filing of a certificate of candidacy, to give written notice to the candidate "of the candidate's obligation to file the statement required by this subtitle . . ."

When Seipp filed his certificate of candidacy, the City Board of Ethics had not yet printed financial disclosure forms or instructions for the 2003 primary election.  Not having a current form, a Board of Elections employee handed Seipp the written form and instructions applicable to the 1999 election. That form instructed Seipp that the financial disclosure statement was to cover the calendar year 1998 and was to be filed "on or before the last day for withdrawal of candidacy (July 16, 1999)."  The employee submitted an affidavit in this case, which apparently was accepted into evidence without objec-

---

**1.** Although no one has raised this issue, a question does lurk whether 2003 is "the year of a mayoral election," to which § 5–3 applies.  The general election for mayor is in November, 2004.  We need not address that question in this appeal.

tion, stating that she had explained orally to Seipp that the financial disclosure statement had to be filed by July 10, 2003—the last day for withdrawal of candidacy. She presented to Seipp, and Seipp signed, a form stating that "[a]s a candidate for public office, I acknowledge that it is my obligation to file a financial disclosure statement under Baltimore City Code, Article 8, Section 5–3(d), on or before the last day for the withdrawal of candidacy for nomination and if I fail to do so my candidacy shall be considered withdrawn." Seipp also submitted an affidavit, in which he asserted his belief that the instructions were that the financial statement would be due July 16, and averred that he did not learn to the contrary until he received a telephone message on his answering machine on July 11. The Circuit Court noted this conflict but made no finding of fact regarding it.

On July 9, employees of the Board of Elections attempted to contact, by phone, all candidates who had not yet filed their financial disclosure form. Seipp was on vacation and did not receive the message, left on his answering machine, until July 11. He immediately—that day—filed the statement, using the 1999 form that he had been given. On July 17, the Board of Elections notified Seipp that he was disqualified as a candidate for failure to file timely the financial disclosure statement in accordance with Art. 8, § 5–3 of the Baltimore City Code, and that his name would not be printed on the ballot.

Seipp argues that the disqualification provision in the City ordinance is invalid because it is not "similar" to the State law. The State law, he notes, requires a 20–day written warning before a candidacy can be deemed withdrawn. Under the State law, there is an opportunity for a candidate to "cure" the delinquency, an opportunity that does not exist under the City law. The City makes a number of responses. First, it points out that the State Ethics Commission had approved the City Ordinance and, citing *Philip Morris, Inc. v. Glendening*, 349 Md. 660, 678, 709 A.2d 1230, 1239 (1998), urges that the Court "has no authority to second guess that determination." Second, it contends that the two laws are, in fact, similar. In that regard, it points out that the notice and opportunity to cure

provision in the State law applies only to the *supplementary* statement that is required, not to the initial statement. There is no notice or opportunity to cure provision applicable to the initial statement. To construe the law as requiring the Board of Elections to afford a 20–day opportunity to cure, it complains, would be "unworkable."

The Circuit Court found as a fact that the State Ethics Commission had approved the City Ethics law as similar to the State law, and, although the evidence offered in support of that finding is less than clear, we shall accept the finding.[2] We discern nothing in the State law that makes such an administrative determination unreviewable, however.

Certainly, *Philip Morris, Inc.* does not support that proposition. Our holding there was that, where a statute vests a purely discretionary power in an Executive official, the exercise of that discretion is not subject to judicial review. *See Philip Morris, Inc., supra,* 349 Md. at 678–79, 709 A.2d at 1239. That is not the situation here. Approval by the State Ethics Commission of a local ordinance is not a discretionary matter. The Commission's approval or disapproval is governed by the statutory requirements.

Indeed, the law at least implicitly, if not explicitly, recognizes that the Commission's conclusions in this regard are subject to judicial review. Section 15–808 of the State Gov-

---

2. Offered in evidence in this case was an unattested letter from the current Executive Director of the State Ethics Commission noting that, on August 22, 1985, the then—General Counsel to .the Commission wrote to the Mayor of Baltimore that "[T]he State Ethics Commission has considered the amended Ordinance and Mr. Brown's interpretative advice on June 17, *2095,* and approves the Ordinance as similar *or substantially similar* to the State Ethics Law as required in Title 6 thereof." (Emphasis added). The "2095" date is an apparent typographical error. Evidence exists in the legislative files of the City's Department of Legislative Reference that, after earlier rejections and years of negotiations between the State Ethics Commission and the City, General Counsel to the Commission wrote to the Mayor on August 22, 1985 that, on June 17, 1985, the Commission had approved a new ordinance enacted by the City Council-an ordinance designed to meet the many other objections registered by the Commission to the City's earlier efforts.

ernment Article provides that, if the State Ethics Commission determines that a county or municipal corporation has not complied with the applicable requirements of subtitle 8, it may petition a Circuit Court with appropriate venue for "appropriate relief to compel compliance," and that the court *"may grant any available equitable relief."* (Emphasis added). That, of course, relates to the situation where the Commission concludes that the county or municipality has *failed* to enact a similar law, but even in that situation, the determination of the Commission is necessarily subject to judicial review. If the court disagrees with the Commission's determination and concludes that the local law *is* similar, it obviously will not grant the requested relief and will dismiss the Commission's complaint.

■ In this case, the Commission supposedly found that the City law *was* similar. Anyone having proper standing could certainly challenge that determination. Section 15–401 permits any "entity" to file a complaint with the Commission alleging "a violation of this title." That would include, of course, the requirement contained in § 15–805. There may, indeed, be "entities" that might wish to challenge the Commission's approval of a local law. Section 15–404 provides for an administrative hearing before the Commission, and § 15–405 requires the Commission to make findings of fact and conclusions of law with respect to each alleged violation. Section 15–406 provides that a respondent who is aggrieved by a final order of the Commission may seek judicial review under the contested case provisions of the Administrative Procedure Act. Whether a local law is sufficiently "similar" to the State law to conform with the requirement of § 15–805 is an issue of law, upon which a court is entitled to decide. We find no evidence of any intent by the General Assembly to leave that determination exclusively and unreviewably in the State Ethics Commission.

■ The real issue is whether the City law is sufficiently similar. The word "similar" does not mean identical but that

which resembles. Webster defines it as "like; resembling; having a general resemblance but not exactly the same." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY, 2d ed. at 1691. Ultimately, of course, similarity is determined by comparing the two laws and making some judgment regarding any variances between them. A departure that is relatively minor or that simply accounts for a local context that is different from the State context does not preclude a finding of similarity. The differences here, however, are not minor, but substantial, and they are not required by any special local context.

■ Section 15–805, consistently with §§ 15–804, dealing with conflict of interests, and 15–806, dealing with lobbying, conveys what the Legislature had in mind. It requires that the local financial disclosure provisions be "similar to the provisions of Subtitle 6 of this title, but shall be modified *to the extent necessary to make the provisions relevant to the prevention of conflicts of interest in that jurisdiction.*" The permissible modifications, other than minor ones, are limited to those necessary to account for the local situation. The model law adopted by the State Ethics Commission for large subdivisions follows that approach. Like the State law, it requires that candidates for elective office file their initial disclosure statement with the certificate of candidacy, that they file supplementary statements in succeeding years in which they remain as candidates, and that their certificate of candidacy be deemed withdrawn if, after notice of delinquency, they fail to file the subsequent statement.

Every large county has followed that approach, at least to the extent of requiring the initial disclosure statement to be filed with the certificate of candidacy. *See* Anne Arundel County Code, Article 9, § 4–103; Baltimore County Code, § 28–117; Frederick County Code, § 1–7.1–5; Harford County Code, § 23–13; Howard County Code, § 22–205(d); Montgomery County Code, § 19A–18; Prince George's County Code, § 2–294. No reason has been presented to us in this record, and we are aware of none, why Baltimore City is

unable, by local circumstance, to follow that approach.[3]

██ The issue is not whether the City's approach is a better one, or one that, in some respects, may be more favorable to candidates. That is a legislative matter. The fact is that, in not requiring the initial statement to be filed with the certificate of candidacy, the City law is substantially dissimilar to the State law, and, in this instance, Mr. Seipp may have been prejudiced by the difference. Had the law required Seipp to file his disclosure statement with the certificate of candidacy, he presumably would have done so (or never become a candidate), and the problem would not have arisen. Instead, he was given an outdated, and therefore erroneous, form, containing an erroneous deadline date, and the only notice of the actual deadline date, if given at all, was given orally. That is clearly not the regime that the Legislature intended. The Circuit Court erred in finding that the City law, under which Mr. Seipp was disqualified as a candidate, was similar to the State law. In this regard, it clearly

---

**3.** The State financial disclosure law was first enacted in 1973. *See* 1973 Md. Laws, (Spec.Sess.), ch 3. It was similar in approach to the current law. It required an initial financial disclosure statement from candidates at the time they filed their certificates of candidacy and additional statements for succeeding years through the year of the election, and directed that Baltimore City, each of the counties, and all municipal corporations enact local legislation, "the standards and requirements of which must be substantially those required by this subtitle for State officials and candidates." *See id,* §§ 29–4 and 29–10. Baltimore City's first attempt at compliance with that requirement came through Council Bill No. 1079, approved in June, 1974. As introduced by the President of the City Council, the ordinance would have required each candidate to file a financial disclosure statement "at or before the same time that person's certificate of candidacy is filed" and provided that the Board of Supervisors of Elections "shall not accept any certificate of candidacy or certification of nomination unless the required statement in proper form has been filed." A subsequent statement was required for each succeeding year, through the year of election, and, if the candidate failed to file a supplementary statement within 20 days after written notice, the candidacy would be deemed withdrawn. During the legislative process, however, all of that language was stricken, and the ordinance adopted, instead, the current regime. There does not appear to be any recorded explanation of the reason for the change.

was not, and, for that reason, may not be used to disqualify Seipp's candidacy.[4]

BELL, C.J., and HARRELL, J., dissent.

Dissenting Opinion by BELL, C.J. in which HARRELL, J., joins.

Maryland Code (1984, 1996 Repl. Volume) § 15–805 of the State Government Article is captioned "Financial disclosure laws." It is in Part I of Subtitle 8. Subtitle 8 addresses Local Government Provisions and included in Part I are provisions concerning Public Ethics Laws for Counties and Municipal Corporations. Section 15–805 provides, as relevant:

> "(b) Except as provided in subsection (c) of this section, the financial disclosure provisions enacted by a county or municipal corporation under § 15–803[1] of this subtitle shall be similar to the provisions of Subtitle 6 of this title, but shall be modified to the extent necessary to make the provisions relevant to the prevention of conflicts of interest in that jurisdiction.

> "(c) (1) This subtitle does not compel the governing body of a county or municipal corporation to require a local official to file a financial disclosure statement except:

>> "(i) when the personal interest of the local official will present a potential conflict with the public interest in connection with an anticipated public action of the local official; and

---

**4.** We are not concerned here with any other aspect of the City law. Our conclusion that Art. 8, § 5–3(f) may not be used to disqualify Seipp as a candidate or deem his candidacy withdrawn is not intended to suggest that any other provision of the City law is invalid.

**1.** Captioned, "Public Ethics Laws required," Maryland Code (1984, 1996 Repl.Vol.) § 15–803 of the State Government Article provides:
"Each county and each municipal corporation shall enact provisions to govern the public ethics of local officials relating to:
"(1) conflicts of interest;
"(2) financial disclosure; and
"(3) lobbying."

"(ii) at least annually to report on gifts received by the local official.

"(2) The provisions shall require that a statement filed under paragraph (1)(i) of this subsection be filed sufficiently in advance of the action to provide adequate disclosure to the public."

Subtitle 6 is captioned "Financial Disclosure." That subtitle prescribes, inter alia, who must file financial disclosure statements, § 15–601, the contents of financial disclosure statements, § 15–607, and the filing requirements of financial disclosure statements. See §§ 15–602–15–605.

Section 15–605 governs candidates for elective office. As pertinent to the resolution of the issue before the Court, it provides:

"(a) In general.—Except as provided in subsection (b) of this section, a candidate who is required by § 15–601(a) of this subtitle to file a statement shall file the statement each year beginning with the year in which the candidate files a certificate of candidacy through the year of the election.

$$* \quad * \quad * \quad * \quad * \quad *$$

"(d) (1) The first statement required under this section shall be filed no later than the filing of the certificate of candidacy.

"(2) In the year of the election the statement shall be filed on or before the earlier of:

"(i) April 30; or

"(ii) the last day for the withdrawal of a candidacy under § 5–502 of the Election Law Article.

"(e) If a statement required by this section is overdue and is not filed within 20 days after the candidate receives from the election board written notice of the failure to file, the candidate is deemed to have withdrawn the candidacy.

"(f) (1) An election board may not accept a certificate of candidacy or certificate of nomination of a candidate covered by this section unless the candidate has filed a statement required by this section or § 15–602 of this subtitle.

"(2) An election board, within 30 days after receiving a statement, shall forward the statement to the Ethics Commission."

Baltimore City enacted a financial disclosure law. Baltimore City Code, (2000 Repl.Vol.) Article 8, § 5.3. By way of comparison, its pertinent provisions read:

*"(d) Election Year Filing—in general.*

"(1) In the year of a mayoral election, on or before the last day that a candidate may file under State Code Article 33, § 5–703 ['Nomination by petition'] or on or before the last day for the withdrawal of candidacy for nomination, each elected official and each candidate for an elective office specified in § 5–2 shall file a statement pursuant to this subtitle covering the calendar year immediately preceding the year in which the election is held."

\*      \*      \*

*"(f) Election year filing—notice of requirements; effect of noncompliance.*

At the time of the candidate's filing of the candidate's certificate of candidacy, the Election board shall issue written notice to the candidate of the candidate's obligation to file the statement required by this subtitle, and, if the candidate fails to do so, the candidate shall be considered to have withdrawn his or her candidacy."

The issue we must resolve is, as the majority characterizes it, "whether the City law is sufficiently similar," *Seipp v. Mayor & City Council of Baltimore*, 377 Md. 362, 373, 833 A.2d 551, 558 (2003), to the State law. The primary rule of statutory construction dictates that, to discern legislative intent, we look to the express language of a statute and give that language its "plain and ordinary meaning". *Rite Aid Corp. v. Hagley*, 374 Md. 665, 680, 824 A.2d 107, 116 (2003). *See also Dyer v. Otis Warren Real Estate Co.*, 371 Md. 576, 581, 810 A.2d 938, 941 (2002); *Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore*, 343 Md. 567, 578, 683 A.2d 512, 517 (1996) ("we begin our inquiry with the words of the

statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also"); *Lewis v. State,* 705 A.2d 1128, 1131, 348 Md. 648, 653 (1998). Furthermore, it is proper to examine a statute "in its entirety and not just as isolated, independent sections." *Waters v. Pleasant Manor,* 361 Md. 82–104, 760 A.2d 663, 675 (2000). *See also Outmezguine v. State,* 335 Md. 20, 41, 641 A.2d 870, 881(1994). *See also Williams v. State,* 329 Md. 1, 15–16, 616 A.2d 1275 (1992).

To be sure, the City ordinance and § 15–605 are not, as the majority acknowledges, identical. While the State law requires the filing of the financial disclosure statement with the certificate of candidacy, the City ordinance permits the financial disclosure statement to be filed later, "on or before the last day for the withdrawal of candidacy for nomination." The laws are, however, similar,[2] as they are required to be by § 15–805(b).

Inherent in both are the same three substantive elements. First, both laws contemplate that a candidate will file a Certificate of Candidacy to be eligible to run in a relevant election. Second, both the ordinance and the § 15–605 require a candidate to file a Statement of Financial Disclosure prior to the election. Finally, both provide a deadline by which a candidate must file his or her Statement of Financial Disclosure in order to avoid withdrawal of his or her candidacy.

The deadline provisions for each statute intrinsically provide notice to candidates that they must file their financial disclosure statements by the stated deadlines or risk ineligibility for

---

**2.** The majority asserts, "The fact is that, in not requiring the initial statement to be filed with the certificate of candidacy, the City law is substantially dissimilar to the State law, and, in this instance, Mr. Seipp may have been prejudiced by the difference." *Seipp v. Mayor & City Council of Baltimore,* 377 Md. 362, 375, 833 A.2d 551, 559 (2003). Thus, the majority apparently agrees that the laws are similar; otherwise, it would not have been necessary for it to use the modifier "substantially."

candidacy. Particularly, a candidate for state office is on notice that his financial disclosure statement is due at the same time he files his initial certificate of candidacy and a candidate for city office is on notice that he must file his financial disclosure statement by the last day allowable for withdrawal of candidacy. Essentially, therefore, the only difference in the notice requirements between the State law and the City law is timing: the former requires immediate filing and the latter provides more time for filing of the financial disclosure statement. Surely, the Maryland legislature did not intend, when it required similarity, rather than identity, between the state and local ethics laws, that a temporal variance would render the local laws dissimilar and thus, illegal.

The majority states that § 15–805 "conveys what the Legislature had in mind," 377 Md. at 374, 833 A.2d at 558, emphasizing the exception permitting the local government to modify the provisions of Subtitle 6 to avoid conflicts of interest in the local jurisdiction. *Id.* I am not persuaded. Indeed, the majority approach disregards, and, in fact, drastically changes the clear and unambiguous language of § 15–805; the majority's construction reads "similar" as "identical" unless there is a basis to modify the provision for the acceptable purpose of avoiding a conflict of interest. The Legislature knows how to require local governments to adopt the language of the State law without alteration and undoubtedly would have done so, had that been its intention. Moreover, Subtitle 6, as I have demonstrated, contains procedural provisions that are not easily, if at all, amenable to conflict analysis. Section 15–605 is one such provision. Under the majority's approach, it and all other procedural provisions to which the Legislature mandated similarity, require local statutes to be identical to the corresponding state statutes unless they were modified "to make the provisions relevant to the prevention of conflicts of interest in that jurisdiction."

A review of the relevant statutory authority makes it clear that the Legislature fully contemplated alterations such as the one the Baltimore City ordinance effected. The Maryland

General Assembly vested the State Ethics Commission with the authority to administer and explain the provisions of, among others of the ethics statutes, § 15–805. *See* Maryland Code, (1984, 1999 Repl. Volume) § 15–205 of the State Government Article.[3] Pursuant to its authority, the State Ethics Commission issued instructions detailing how counties and municipalities should craft their local legislation. *See* COMAR §§ 19A.04.01, .02, & .03 and Appendices A & B. As part of the regulatory scheme, the State Ethics Commission recognized that "...[t]he particular parameters of the provisions may be established by the respective counties and municipalities *based on local circumstances* and provisions viewed as necessary to prevent conflicts of interests in the locality." COMAR 19A.04.02.01 (emphasis added). Further, the State Ethics Commission provided that "[t]he counties and municipalities may reflect in their local provisions any administrative mechanisms appropriately suited to the local government organization and authority", COMAR 19A.04.03(a), and that "counties and municipalities have considerable flexibility in adapting the administration of the law to reflect local circumstances..." COMAR 19A.04.03(b). The aforementioned provisions make it clear that the Maryland Legislature recognized that each county and municipality might have local circumstances that would require it to tailor the State law to prevent conflicts of interest and to reflect local administrative concerns. Even the majority concedes that the Maryland statute contemplates that local governments will alter the Financial

---

**3.** Maryland Code, (1984, 1999 Repl. Volume) § 15–205 of the State Government Article provides:

"(a) In general.-The Ethics Commission shall:

"(1) except as otherwise expressly provided in this title, administer the provisions of this title;

"(2) prescribe and provide forms for each document required by this title;

*   *   *

"(6) publish and make available to persons subject to this title, and to the public, information that explains the provisions of this title, the duties imposed by it, and the means for enforcing it"

§ 15–205 Md.Code, (1984, 1999 Repl. Volume) of the State Govt. Article.

Disclosure requirement to "account for the local situation." To be sure, as the majority notes, there is no evidence before us as to whether the Mayor and the Baltimore City Council tailored its financial disclosure ordinance to account for a local situation, as § 15–805 and the Ethics Regulations allow. What is telling, however, is that the State Ethics Commission, which, as indicated, is charged by the Legislature with administering and explaining all aspects regarding local enactments of the ethics laws, determined that Article 8, § 5.3 of the City financial disclosure ordinance was "substantially similar" to § 15–605 of the State law and, thus, legally sufficient.

Contrary to the majority's holding, the express language of § 15–805 requires that the Baltimore City ordinance be *similar* to, not *the same* as, the state law. I dissent.