Dear Robert A. Hahn
On behalf of the State Ethics Commission ("the Commission") you have requested an opinion on whether liquor control boards in Garrett, Harford, Somerset, Wicomico, and Worcester counties are units of State, or local, government for purposes of the Public Ethics Law. Control boards are government agencies authorized to perform certain liquor wholesaling functions and to operate liquor dispensaries. In your letter, you note that the Commission has always treated these boards as units of county government, as it has treated boards of zoning appeals and boards of liquor license commissioners. For this reason, you have also asked about the implications for these other bodies, should we determine that officials and employees of liquor control boards are subject to State ethics requirements.
In our opinion, the liquor control boards in Somerset, Wicomico, and Worcester counties (the only three that actually operate liquor dispensaries) function as State entities for purposes of the Public Ethics Law and therefore their members and employees should be governed by State ethics requirements. For the Harford County Liquor Control Board, a 1999 law specifies that its members and employees are subject to certain State ethics requirements. In Garrett County, where appointees to the liquor control board serve ex officio
as its board of license commissioners, board members do not currently perform any of the functions of a liquor control board and have not done so for more than twenty years. Accordingly, we believe that the county ethics code should apply, consistent with the members' other duties as Garrett County's board of license commissioners. Lastly, with regard to boards of zoning appeals and boards of license commissioners generally, we do not believe that any change in Commission policy is warranted. Zoning appeals and liquor licensing boards should remain subject to local ethics codes. *Page 135 
 I Background
The Public Ethics Law regulates the conduct of officials and employees of State and local government. See Annotated Code of Maryland, State Government Article ("SG"), § 15-101 et seq. At the State level, certain rules for ethical behavior — duties to avoid conflicts of interest (Subtitle 5, Part I), to disclose financial interests (Subtitle 6) — apply directly to officials serving in "executive units," and are administered and enforced by the Commission. At the local level, the standards of conduct described in the statute apply indirectly, through a requirement that local governments adopt codes of ethics "similar" to the State's, which codes are administered and enforced by municipal or county ethics commissions. SG §§ 15-803 through 15-806; Seipp v.Baltimore City Bd. of Elections, 377 Md. 362,833 A.2d 551 (2003).
Relevant to your questions are two terms defined in the Public Ethics Law — "executive unit" and "local official." An executiveunit is an agency "of State government" not in either the Judicial branch or the Legislative branch. SG § 15-102(m)(1). A second part of the definition specifies that the term includes certain county health departments, as well as the offices of the sheriff and the State's Attorney in each county. SG § 15-102(m)(2). Local official means "an official, officer, or employee of a county or municipal corporation" and includes "each member and employee of a board of license commissioners. . . ." SG § 15-102(y). Thus, apart from boards of license commissioners,local refers to the government of a political subdivision of the State, not to a geographical area of operation. According to each definition, then, the ethics code that will apply turns on whether the agency or official is "of" either State, county, or municipal government.
Alcoholic Beverages Article
Title 15 of the Alcoholic Beverages law (Annotated Code of Maryland, Article 2B) creates two basic types of regulatory and licensing boards, boards of license commissioners (Subtitle 1) and liquor control boards (Subtitle 2). Both exercise only "local" authority in the sense that their jurisdiction and powers are confined to the geographical area of a particular political subdivision. Statewide regulatory and enforcement powers are vested in the Office of the Comptroller. See, e.g., Article 2B, § 2-101 et seq. and §§ 10-101, 10-201, 16-404. In general terms, boards of license *Page 136 
commissioners ("licensing boards") are concerned with liquor licensing and with regulating and inspecting their licensees. Liquor control boards ("control boards"), in contrast, are authorized to operate county liquor dispensaries which make wholesale or retail "package" sales of certain alcoholic beverages (typically wine and spirits, but not beer) as a means to regulate price and competition. Article 2B, § 15-201 et seq. To this end, control boards have a local monopoly on distribution of the types of alcohol they sell.Id., § 15-204.
As a regulatory measure, government sale or distribution of alcohol is designed to promote temperance, not revenue. The concept is that government can more effectively control and regulate liquor outlets that it owns and operates than those owned and operated by private business. See, e.g., Commonwealth v.Stofchek, 185 A. 840, 845 (Pa. 1936) (explaining regulatory role of liquor dispensaries). As expressed in Article 2B, the State's policy includes:
 "displacing or limiting . . . economic competition by regulating or engaging in the sale or distribution of alcoholic beverages or both in order to obtain respect and obedience to law, to foster and promote temperance, to prevent deceptive, destructive, and unethical business practices, and to promote the general welfare of its citizens by controlling the sale and distribution of alcoholic beverages.
Article 2B, § 1-101(b)(1) (emphasis added). Thus, when county liquor dispensaries engage in the sale of alcoholic beverages they perform a governmental function, acting within the General Assembly's comprehensive regulatory scheme. See 62 Opinions of theAttorney General 45, 50-51 (1977).
Liquor Control Boards Generally
At present, six counties have some form of liquor control board — Garrett, Harford, Montgomery, Somerset, Wicomico, and Worcester counties. As you pointed out in your letter, the Montgomery County Department of Liquor Control is unlike the *Page 137 
other five and so it was not included in your opinion request.[1]
It bears mentioning, however, that only in Montgomery County is the "Department of Liquor Control" expressly designated an agency of county government and made fully subject to County administrative control. Article 2B, § 15-201(a). In the other five counties, some form of control board exists, with some variation in their powers and practice. According to our research, however, in only three of these counties — Somerset, Wicomico, and Worcester — are dispensaries actually operating. See, e.g., Fiscal and Policy Note to House Bill 227 (February 19, 2009) (discussing statutory borrowing limits of dispensary systems in these counties). The control board in Garrett County is authorized to establish and maintain dispensaries, but does not do so, a circumstance which we must account for in our analysis. The Harford County control board no longer has authority to operate dispensaries.
Section 15-201(b) specifies that control boards shall consist of three members, except in Harford County, where the board has five. The nomination process differs slightly from county to county, but in all cases members of the respective control boards are appointed by the Governor for a term of years. Article 2B, § 15-201. Members' salaries and certain expenses are paid by their respective counties, in most cases as prescribed by State law.Id., § 15-201(h); but see § 15-201(h)(1) (in Garrett County, salary to be set by County Commissioners in accord with county's public local law), § 15-201(h)(7) (in Worcester County, compensation set by County Commissioners). As a condition of service, neither appointed board members nor dispensary employees are permitted to have any direct or indirect financial interest in a business that manufactures, purchases, or sells alcoholic beverages in the state. Id., § 15-208(a).
Each control board is granted "full power and authority within its county" to appoint employees and to set their employees' compensation, to enter into contracts, to make rules and regulations, and to establish operating hours for the dispensaries.Id., § 15-205(a)-(h). Subject to approval by county government, control boards are authorized to rent, lease, or buy such premises as may be *Page 138 
needed for their dispensary operations.Id., § 15-205(g). Control boards may take advances from their counties or borrow from banks on their own credit, either for working capital or to acquire or operate facilities.Id., § 15-202. They are also permitted to establish and maintain a reserve account, the maximum for each control board set by statute. Id., § 15-207. Control boards must keep financial records and make them available to the state Comptroller for inspection. Id., § 15-206. They must also report their operating results to the governments of their respective counties.Id. Proceeds from dispensary operations are to be paid to each county, or in some cases, shared also with municipalities and certain homeowners associations where the dispensaries are located.Id., § 15-207(h)(3).
Garrett County Liquor Control Board
In Garrett County, members of the Liquor Control Board occupy two separate offices concurrently. Article 2B, § 15-201(c)(6). The statute provides that members appointed to the control board serveex officio as the board of license commissioners, though they receive compensation only for the former office.Id., § 15-108; see also Article 2B, § 15-101(m). The Liquor Control Board is declared to be a "State agency," but the provision declaring this appears in Subtitle 1 (which relates to boards of license commissioners) and the powers described there are licensing powers. Article 2B, § 15-108.
In 1985, the Court of Special Appeals interpreted the various provisions concerning the two liquor boards in Garrett County.Jamison v. Browning, 61 Md. App. 405, 486 A.2d 810 (1985). The court concluded that the General Assembly intended to create two separate boards with identical membership; the function being performed at any given time would dictate which of the two boards was then in session. 61 Md. App. at 409. Since that decision, however, these distinctions appear to have lost some relevance. Sometime after Jamison, the dispensary system in Garrett County was shut down, presumably by action of the control board itself. As a result, the Garrett County board now functions exclusively as a board of license commissioners, though its statutory power to act as a control board remains in Article 2B. *Page 139 
 Harford County Liquor Control Board
In Harford County, all alcoholic beverage regulation is conducted by a single entity — the Harford County Liquor Control Board — which acts as a board of license commissioners. Article 2B, § 15-201(c)(6). At one time, the Harford County Liquor Control Board also exercised the powers of a liquor control board, but no longer. Its authority to operate a dispensary system was removed in 1979. Chapter 742, Laws of Maryland 1979. In 1999 the General Assembly amended Article 2B to specify that this board is subject to State ethics requirements:
 Notwithstanding any other provision of the Code or local law, the members of the Harford County Liquor Control Board are subject to the provisions regarding financial disclosure, conflicts of interest, and lobbying activities under Title 15, Subtitle 5, Part I, and Subtitles 6 and 7 of the State Government Article.
Chapter 414, Laws of Maryland 1999 (codified at Article 2B, § 15-201(b)(2)(ii)). Similarly, employees of the Harford County Liquor Control Board are, by express language, made subject to State law conflicts of interest and lobbying rules, but are exempted from the financial disclosure filings required by SG § 15-601. Article 2B, § 15-205(i)(4).
 II Analysis
A. Determining State versus Local Status
There is no "single test" to determine whether a particular government entity is part of State government or of county or municipal government. See, e.g., O B, Inc. v.Maryland-Nat'l Capital Park and Planning Comm'n, 279 Md. 459,462, 369 A.2d 553 (1977). Instead, judicial decisions and Attorney General opinions have considered a range of factors bearing on the entity's relationship to the State or to local government, giving special emphasis to one or more such factors in light of the context or purpose of the inquiry. See, e.g., 64 Opinions ofthe Attorney General 66, 70 n. 1 (1979). As a result, an agency or board may be *Page 140 
a State entity for some purposes and local for others. 60 Opinions of the Attorney General 813, 815 (1975).
In the ethics context, prior opinions of this Office have most often given priority, first, to the appointment and removal power,see, e.g., 58 Opinions of the Attorney General 343, 348-49 (1973) (interpreting "local official" under Financial Disclosure Act); 60 Opinions of the Attorney General 813, 819 (1975); 64 Opinions of the Attorney General 151 (1979), and secondarily, to the nature of the agency's function and whether that function is a State or local one. See 58 Opinions of the AttorneyGeneral 3 (1973); 58 Opinions of the Attorney General 285 (1973); 64 Opinions of the Attorney General 151 (1979). Although these two factors are not by themselves conclusive, and other relevant factors must be examined as well, it is nevertheless true that, when aligned, they have consistently guided our decisions in ethics-related opinions.
Thus, relying primarily on the appointment or removal power and on the State or local nature of the agency's function, we have decided that the Prince George's County Board of License Commissioners was a State agency not subject to the county's conflict of interest rules, 58 Opinions of the Attorney General 3 (1973), that the same county's Board of Supervisors of Elections was subject to the State Code of Ethics, 58 Opinions of the Attorney General 285 (1973), that local, not State, conflict of interest rules applied to the Washington Suburban Sanitary Commission, 60 Opinions of theAttorney General 813 (1975), and that the State Code of Ethics applied to the boards of license commissioners of Allegany and Frederick counties, and to other similar officials. 64 Opinions ofthe Attorney General 151, 153 (1979) ("Obviously, those commissioners who are appointed and may be removed by the Governor cannot be considered County officials"). In short, where an agency administers a State policy, and State authorities have been vested with the right to appoint or remove the officials who carry it out, our analysis has seldom required more; we have recognized that such bodies are State entities for ethics purposes.
On occasion, other factors have been considered important as well. For example, in 58 Opinions of the Attorney General 343 (1973), in addition to the appointment power, Attorney General Burch stressed "the level of government with which [the official] most directly and frequently interacts in his official capacity."Id. at 348. Other factors that either we or the courts have relied upon include the statutory source of the agency's authority,Bd. of Trustees of Howard Community. Coll. v. John K. Ruff,278 Md. 580, 586-87, *Page 141 366 A.2d 360 (1976), the agency's or official's source of funding, 58 Opinions of the Attorney General 343, 349 (1973), and the agency's geographical jurisdiction. 65 Opinions of the AttorneyGeneral 356, 359-60 (1980).
While each of these has a place in our analysis, we find none to be of special relevance in the present context. As a general matter, the level of government with which an agency interacts probably deserves less emphasis than the language of one of our earlier opinions suggests; more important are the terms on which such interactions occur and whether, for example, the agency is subject to control or direction by the relevant governing body.[2] But regardless of its value generally, we think frequency of interaction has slight importance to the issue here, in that control boards have only limited interaction with government at any level.See, e.g., Letter from Assistant Attorney General Dan Friedman to Senator J. Lowell Stoltzfus (July 9, 2008) (discussing relative autonomy of control board's operations). As we discuss below, what interaction there is between control boards and county government centers primarily on financial matters, an area we address in the context of the county's role as a source of control board funding.
B. Evaluating the Relevant Factors
First, and most significantly, the power to appoint and remove control board members belongs to the Governor, generally with the advice and consent of the Senate. Article 2B, § 15-201; see alsoSchisler v. State, 394 Md. 519, 594-95, 907 A.2d 175 (2006) (regarding Governor's removal authority in general). In this regard, Attorney General Burch reasoned that in ethics matters other considerations, though not immaterial, "take on a secondary importance when the statute in question pertains so directly to the conduct of individual [officials] and inevitably raises questions as to whether they should continue in office." 60 Opinions of theAttorney General 813, 819 (1975). *Page 142 
A second critical factor is that control boards perform an exclusively State function. The General Assembly, with its enactment of Article 2B, has preempted the field of alcoholic beverages regulation. Piscatelli v. Bd of Liquor License Comm'rs,378 Md. 623, 636, 837 A.2d 931 (2003); compare
Article 25A, § 5(S) (Express Powers Act, denying charter counties power to legislate "with reference to licensing, regulating, prohibiting, or submitting to local option, the manufacture or sale of malt or spiritous liquors"). Thus, in Maryland, regulating or controlling the traffic or sale of liquor is a function exclusive to State government or its agents.[3] As previously explained, liquor dispensaries are part of this State regulatory scheme and therefore control boards, in operating them, likewise perform a State regulatory function.
A third consideration indicating State government status is that control boards are created directly under State law and State law remains the sole source of their powers and duties. The local monopoly that control boards exercise is granted to them directly by the State, not through any action by county government. Article 2B, § 15-204. What types of liquor the dispensaries may sell, and at what prices, are concerns of the General Assembly, not county government. Board members' duties are prescribed by public general law. County governments are therefore unable to modify those duties. For control board members, it is State law that sets the major conditions of their public service — term of office, salary, residency and other qualifications.[4] In short, nearly all aspects of the member's office are directly controlled by the State legislature. Compare Rucker v. Harford County,316 Md. 275, 285, 558 A.2d 399 (1989) ("the question of whether sheriffs and their deputies are State or local officials primarily depends on whether the creation and ultimate control of the offices of sheriff and deputy lie with the State or with local government"). Apart from a small number of occasional decisions — whether to provide a loan or advance, whether to approve a new dispensary location — county government *Page 143 
has no role in defining or supervising normal control board operations.
In our view, the above factors in combination are compelling indicators that control boards are State executive units. On the other hand, there are some countervailing factors as well. With regard to financial relationships, for example, the county is both a source of control board funding and the primary recipient of proceeds from dispensary operations. However, given the place and function of control boards within the State regulatory scheme, what influence a county government might otherwise exert through its budget process is limited.[5]
A county may not, for example, enact legislation to close liquor dispensaries or disband the control board. Montgomery County v.Bd. of Supervisors of Elections, 53 Md. App. 123, 127,451 A.2d 1279 (1982) (county voters cannot remove State-created monopoly of county liquor dispensaries); see also
Article 25A, § 5(S) (no express power granted to charter counties to regulate sale of malt or spiritous liquors). Similarly, we do not think the county could eliminate the control board indirectly, or interfere with its mission, by withholding funds necessary to its operation. See, e.g., 77 Opinions of the AttorneyGeneral 7 (1992) (Talbot County obliged by Article 2B to fund its board of liquor license commissioners); compare
80 Opinions of the Attorney General 295, 299-300 (1995) (discussing county's budget responsibility for State's Attorney's office). Thus, what is often a fairly reliable marker of control — the ability to withhold funding — is largely, or at least partially, absent from the county's relationship to the control board.
In this respect, the relationship between county government and control board looks much like that between the county and a State's Attorney's or sheriff's office, both of which are expressly designated "executive units" under the Public Ethics Law, both of *Page 144 
which are "local" in terms of geographical jurisdiction, and both of which are funded through the county budget process. See,e.g., Rucker, 316 Md. at 283-84 (citing examples); seealso Article 24, § 8-101 ("Entities subject to county budget and fiscal policies and purchasing laws"). In neither of these cases does local funding translate into local control or local status.[6] Moreover, unlike most agencies, control boards can borrow on their own credit and maintain a reserve fund, powers which give them even greater autonomy. As the Court of Appeals has observed, "[m]any other considerations have been more important than funding in determining the status of a governmental agency or official as State or local." Rucker, 316 Md. at 284.
Other "local factors" are, in a similar way, rendered less meaningful when it is State law that accounts for them. That dispensary profits go to county government, for example, indicates that control boards belong to the county no more than paying a share of profits to municipalities or homeowners associations (in Worcester County) indicates that control boards belong to those bodies. See Article 2B, § 15-207(h)(3). In each case, net proceeds are directed and controlled by the General Assembly. Moreover, it is possible to think of such proceeds as compensatory — at least in part — replacing tax revenues lost from the diversion of trade from private business, thus to defray costs imposed on the local economy by the State's regulatory scheme. In any event, nothing about the arrangement is discretionary to the county. And as we have seen, local government has no say in pricing or other policies that might increase the profits, all of which are instead matters governed by State law. See, e.g., Article 2B, § 15-204(d) (setting markup limit for liquor sales in Wicomico County).
Finally, we consider the boards' territorial jurisdiction. Without question, wholesaling and dispensary operations have their greatest impact locally. It is therefore understandable that control boards might be viewed in the same way as county or municipal officials, whose primary impact and jurisdiction are also local. However, our office has long recognized that an agency's local orientation
does not truly define it. See 6 Opinions of the AttorneyGeneral 427 (1921) (". . . the true test is not a geographical *Page 145 
limitation, but the nature and character of the service to be rendered"); compare Spielman Motor Sales Co. v. Dodge,295 U.S. 89 (1935) (holding county district attorney was "officer of the state" under federal statute due to performance of state function). Moreover, the issue under the Public Ethics Law is not whether a governmental unit may be said to be "local" in a geographic or descriptive sense, but whether it is a subordinate element of State government or of county or municipal government.
Codes of public ethics are manifestly about promoting the honesty, integrity, and impartiality of public officials, and increasing public confidence that government serves the general interest rather than merely the personal interests of public officials or of those close to them. See, e.g., Montgomery County v. Walsh, 274 M d. 502, 514-15, 336 A.2d 97 (1975). A more pointed way of looking at this question, therefore, is to ask "Which level of government would be more answerable for an ethical lapse by a member of a liquor control board? Would a violation represent a misuse of State or county government power?" From that perspective, and consistent with our prior ethics opinions, we conclude that liquor control boards are State executive units within the meaning of the Public Ethics Law.
C. Administrative Practice and Legislative History
In your letter, you advised us that, in the past, the Commission has treated liquor control boards as subject to local ethics rules and thus, by implication, as part of county government. Apparently, the question of ethics jurisdiction over the control boards has seldom arisen and there is little documentation of the Commission's past practice with respect to control boards. It is thus unclear how often and how consistently the Commission's interpretation was expressed *Page 146 
and what weight a court would give it.[7] See Comptroller v.John C. Louis Co., 285 Md. 527, 544, 404 A.2d 1045 (1979).[8]
We have also considered whether the General Assembly was made aware of that policy in such a way that it could be said to have approved it or acquiesced in it. However, there appears to be little reason to conclude the Legislature has ever held a consensus view that members of control boards are county officials, or that it has been explicitly aware of the Commission's practice in this regard. What we have found instead is a general background of uncertainty, even among control boards themselves, on precisely what relationship they have to county government.
There is no evidence of any widespread acceptance of the notion that control boards are part of county government.[9] Rather, the idea that control boards are more "local" than State in nature *Page 147 
appears to be disputed by the very officials most directly affected. Legal counsel for the board in Wicomico County, for example, describes the board, variously, as "autonomous," or having "independent status," or being an "independent state agency."See Letter from Victor H. Laws, III, Attorney, to Matthew E. Creamer, Council Administrator, Wicomico County (June 9, 2008), pp. 2-3. Similarly, the board's website explains that "[it] serves Wicomico County residents, but it isn't part of the county government."[10] To the same effect is the website for Worcester County's "liquor marts."[11]
The Commission's practice, which directly affects only a small number of officials, has not been stated through the rulemaking process, in an Advisory Opinion, or as a finding in a contested case.[12] Thus, it appears unlikely that General Assembly would have viewed members of control boards generally as county officials, or that it would be aware of the Commission's past policy in particular. Our research did not uncover any proposed legislation dealing with ethics requirements for control boards as a group. Only once has the General Assembly addressed the issue of ethics coverage for what is even nominally a control board, by amending a local provision of Article 2B relating to the Harford County Liquor Control Board, to specify that State ethics rules should apply. Chapter 414, Laws of *Page 148 
Maryland 1999. Because that legislation dealt with only a single entity, and one that also functions as a board of license commissioners, we are reluctant to draw from it broader lessons regarding legislative intent toward entities which are purely control boards. See, e.g., Romm v. Flax, 340 Md. 690, 698 n. 2,668 A.2d 1 (1995) (legislative history of subsequent legislation can be ambiguous as to meaning of prior law). However, at a minimum, this enactment does not endorse the principle that control boards should be subject to local ethics codes.
In sum, neither past administrative practice nor the available legislative history alters our view that control boards should be treated as State executive units for purposes of the State ethics law.
D. Garrett and Harford County Liquor Control Boards
As explained above, the General Assembly has specified that the Harford County Liquor Control Board must comply with State ethics rules. Article 2B, §§ 15-201(b)(2)(ii), 15-205(i)(4). That language is unambiguous and requires no further discussion. In the case of Garrett County, our view is that the board's actual practice should be the deciding factor. Because that board no longer performs control board functions — as liquor wholesaler or dispenser — it remains a control board only in a latent or potential sense. Its continuing authority means something, but so long as the authority remains unused we do not see that it affects the fundamental character of the Garrett County board. On the other hand, the board does act as a board of license commissioners, whose members are by definition "local officials" under the Public Ethics Law and thus subject to the county ethics code. SG § 15-102(y)(2). For this reason, we think the Commission's current ethics treatment of the Garrett County board is appropriate.
E. Boards of License Commissioners and Boards of ZoningAppeals
You have asked about the Commission's existing policy regarding boards of license commissioners and boards of zoning appeals as local entities. In our view, both types of boards are properly subject to local ethics codes. See, e.g., Carroll CountyEthics Comm'n v. Lennon, 119 Md. App. 49, 703 A.2d 1338 (1998) (county ethics rules applied to planning and zoning commission);see also Murray v. Director of Planning, 217 Md. 381,143 A.2d 85 (1958) (treating zoning officials as county officers of charter counties). Nothing in the reasoning or conclusion of this opinion as *Page 149 
to control boards should call those other Commission policies into question. As to license commissioners, they are defined specifically in the Public Ethics Law as "local officials." SG § 15-102(y)(2). The Commission's view thus accords with the plain and unambiguous language of the statute.
With respect to boards of zoning appeals, we assume you are referring to the several different county or municipal boards of appeal that perform functions related to zoning, such as hearing and deciding variances and special exceptions.[13] As indicated earlier in this opinion, prior opinions of this Office, in deciding which ethics law is applicable, have given first priority to appointment and removal power. With respect to county and municipal boards of zoning appeals, that power resides with local government officials.[14]
As for the second test — the nature of the agency's function and whether that function is State or local — we believe that a board of appeals functions as a local entity. The powers of a board of appeals are set by the General Assembly and then delegated to local government with specific duties, criteria, and requirements.[15]
While such powers are to be exercised subject to a myriad of requirements set by State law, ultimately the decisions of a board of appeals involve the application of a local ordinance.
The situation with boards of appeals is therefore quite distinct from that of control boards, where local government has no power to appoint or remove board members, nor to legislate whatsoever on the subject of alcoholic beverages sales. Once adopted by a political subdivision of the State, planning and zoning is accomplished *Page 150 
through local law, though always within the limits defined by the State Legislature. There is no need to catalog all the variations in powers among the local boards of appeals to conclude that they are local entities subject to local ethics laws. In short, out analysis confirms the Commission's policy.
 III Conclusion
For the reasons discussed above, we conclude that liquor control boards in Somerset, Wicomico, and Worcester counties are State entities for ethics purposes. As to the board in Garrett County, we believe that it should be treated as "local" so long as it does not exercise the functions of a liquor control board. The Harford County Liquor Control Board is governed by a statute specific to that body, which provides that State ethics rules apply to its board members and employees. Finally, zoning boards and boards of license commissioners should remain subject to local codes of ethics.
Douglas F. Gansler Attorney General
Jeffrey L. Darsie Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] In Montgomery County, the Department of Liquor Control is a department of the county government under the supervision of the County Executive. Article 2B, § 15-201(a). Its Director is appointed by the County Executive with the approval of the County Council and board members serve only an advisory and reporting role.Id., § 15-201(c)(7). All further references in this opinion to liquor control boards do not include the Montgomery County Department of Liquor Control.
[2] That earlier opinion interpreted "local official" under the State's former Financial Disclosure Act with reference to various agencies, including regional or bi-county agencies, where frequent interaction and coordination of policy with county government was implicitly viewed as more central to the agencies' function. 58 Opinions of the Attorney General 343, 355 (1973). In any event, a careful reading of that opinion suggests that "interaction" played only a minor role in the analysis.
[3] The General Assembly has only rarely delegated to a political subdivision some of its power to regulate alcoholic beverages.See, e.g., Article 25, § 3(ee) (express power granted to Talbot County to regulate retail liquor sales in the county); Article 2B, § 6-101(v)(2) (same).
[4] In Worcester County, State law sets a minimum level of compensation, but above that level the County Commissioners have been granted authority to set salaries for the control board. Article 2B, § 15-201(h)(7).
[5] County government's budgetary role appears to be implied by various provisions of Article 2B, such as those relating to salaries and expenses, § 15-201, and to the disposition of "net proceeds." Article 2B, § 15-207. Therefore, we assume that control boards are or may be funded and paid through county budgets, rather than through cash flows from dispensary operations. But see note 11 (describing dispensary budget in Worcester County). That issue, however, is not presented here and therefore we intend no comment on county budget procedures or how dispensary funds are to be managed.
[6] See also Letter from Assistant Attorney General Dan Friedman to Senator J. Lowell Stoltzfus (July 9, 2008), p. 5 (advising that County Council of Wicomico County has no oversight role regarding Liquor Control Board disbursements).
[7] During the late 1990s, the Executive Director of the Commission apparently corresponded with Somerset and Harford counties concerning coverage of the liquor control boards by local ethics laws. See Letter of John E. O'Donnell, Executive Director, State Ethics Commission, to Philip L. Gerald, President, Somerset County Commissioners (October 24, 1997); Letter of John E. O'Donnell to Eileen Rehrmann, Harford County Executive (February 18, 1998). We note also that the Worcester County Code has, since the early 1980s, specifically included the liquor control board in its county ethics law. See Worcester County Code, CG, § 5-101(a)(3) (Supp. #1, 12-84). By contrast, the Wicomico County ethics law from 1986 provides only that it "shall apply to the elected and appointed officials of Wicomico County and to all compensated full-time employees of Wicomico County, except as hereinafter set forth." Wicomico County Code § 37-1 (7-25-86). The language of that provision remains unchanged.
[8] In John C. Louis the Court stated that "if an administrative interpretation has not resulted from a contested adversary proceeding, or from a promulgated administrative decision, rule, regulation, or departmental statement, it is entitled to relatively little weight. Similarly, if the administrative practice has not been publicly established, it is not entitled to substantial weight." 285 Md. at 544 (citations omitted).
[9] See, e.g., 19 Opinions of the Attorney General 129 (1934) (State agency implied); 22 Opinions of the AttorneyGeneral 108 (1937) (same); 62 Opinions of the AttorneyGeneral 45, 53 n. 5 (1977) (assuming, without deciding, control board is state agency from exclusively State function and Governor's appointment authority); but see also 24 Opinions of theAttorney General 124 (1939) (treating as local); 40 Opinions ofthe Attorney General 620 (1955) (same).
[10] See http://www.wcliq.com/about-us.aspx (last visited July 17, 2009).
[11] "The Liquor Control Board of Worcester County is not an official part of the county government. The board is responsible for preparing their own budget, and is self maintaining in all aspects of a business. Some important details of the Liquor Control Board are that there are ZERO tax dollars involved in the daily operation of the business. L.C.B. employees are not Worcester County employees. All the profits derived from the sale of liquor through the Wholesale Department and the six Liquor Marts located throughout the county are remitted and divided among Worcester County and the towns of Berlin, Ocean City, Pocomoke and Snow Hill." (emphasis in original) Official website of the Worcester County Liquor Control Board, http://www.liquormrt.com/4.html, (last visited July 17, 2009).
[12] The only occasion which apparently drew legislative notice occurred when the Executive Director advised Harford County of the Commission's view that control board members were subject to the local ethics code. See note 7, above. The Legislature then passed legislation specifically placing the Harford County control board under the State ethics provisions. Chapter 414, Laws of Maryland 1999.
[13] See Annotated Code of Maryland, Article 25A, § 5(u) (charter county board of appeals); Article 28, § 8-111
(Prince George's County Board of Zoning Appeals); Article 66B, § 2.08
(Baltimore City Board of Municipal and Zoning Appeals); Article 66B, § 4.07 (non-charter county and municipal boards of zoning appeals).
[14] See Annotated Code of Maryland, Article 25A, § 5(u); Article 28, § 8-107(a); Article 66B, § 2.08(a); Article 66B, § 4.07(a).
[15] See Annotated Code of Maryland, Article 25A, § 5(x) (charter counties); Article 28 (Prince George's and Montgomery counties); Article 66B (non-charter counties and municipalities, as well as charter counties for specific sections). The specific duties and requirements imposed on local governments with regard to the delegation of planning and zoning powers depends on the type of local government. *Page 151