*Susan Dzurec, et al. v. Board of County Commissioners of Calvert County, Maryland, et al.*, No. 1, September Term, 2022, Opinion by Booth, J.

**PUBLIC ETHICS LAW—CONFLICTS OF INTEREST—RIGHT TO DECLARATORY RELIEF**

The Calvert County Ethics Code prohibits local elected officials from participating in matters in which they have a conflict of interest. Petitioners filed a complaint in the Circuit Court for Calvert County seeking a declaratory judgment that the Calvert County Comprehensive Plan was "illegally passed" and was "therefore void" because one member of the Board of County Commissioners of Calvert County had a conflict of interest in the legislation and did not recuse himself. The circuit court granted Calvert County's motion for summary judgment, which was affirmed by the Appellate Court of Maryland. The Supreme Court of Maryland affirmed the circuit court's judgment.

The Supreme Court of Maryland held that Petitioners were not entitled to the relief sought. Under Maryland common law, ordinarily courts will not consider the motives of legislators or public officials when undertaking purely legislative acts. The common law principle arises from separation of powers concerns under Article 8 of the Maryland Declaration of Rights.

The Supreme Court also rejected the Petitioners' assertion that the County Commissioners created an implied right of action that would entitle Petitioners to the remedy they sought. Assuming, without deciding, that the County Commissioners had the legal authority to establish such a right, there was no evidence that the County Commissioners intended to create such a private right of action.

IN THE SUPREME COURT

OF MARYLAND*

No. 1

September Term, 2022

SUSAN DZUREC, et al.

v.

BOARD OF COUNTY COMMISSIONERS
OF CALVERT COUNTY, MARYLAND, et al.

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Opinion by Booth, J.

Filed: January 25, 2023

\* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

In this case, we must determine whether the Petitioners, four Calvert County residents, Susan Dzurec, Myra Gowans, Michael King, and Phyllis Sherkus (collectively, "Dzurec"), may bring an action against the Board of County Commissioners of Calvert County, Maryland (the "County Commissioners" or "Commissioners") and Calvert County, Maryland ("the County"), seeking a declaratory judgment that the Calvert County Comprehensive Plan was "illegally passed" and is "therefore void" because one of the Commissioners, Kelly D. McConkey, had a conflict of interest in the legislation and did not recuse himself. Dzurec filed her action against the County[1] in the Circuit Court for Calvert County, requesting that the circuit court void the Comprehensive Plan in light of Commissioner McConkey's conflict. Following a hearing, the circuit court granted the County's motion for summary judgment. Dzurec filed a timely appeal to the Appellate Court of Maryland (at that time named the Court of Special Appeals of Maryland),[2] which affirmed the judgment of the circuit court in an unreported opinion. *Dzurec v. Bd. of County Comm'rs*, No. 29, Sept. Term, 2021, 2021 WL 6111666 (Dec. 27, 2021).

---

[1] We will collectively refer to the County and the County Commissioners as "the County."

[2] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

Dzurec petitioned this Court for a writ of *certiorari*, which we granted to consider the following question:[3]

> Whether the circuit court erred in granting the County's motion for summary judgment where Dzurec sought a declaratory judgment that the adoption of the Calvert County Comprehensive Plan—a legislative enactment by the County Commissioners—is void because one Commissioner's vote on the legislative action violated the conflicts of interest provisions of the Calvert County Ethics Code.

For the reasons set forth below, we answer the question "no" and affirm the judgment of the circuit court.

## I

### Statutory and Local Law Framework

Before we turn to the facts and procedural history in this matter, it is useful to discuss some of the statutes and local laws that form the backdrop for the dispute between the parties—specifically: the Maryland Public Ethics Law,[4] which mandates that local governments adopt and enforce local ethics ordinances; the Calvert County Ethics Code that has been adopted pursuant to the requirements under the Maryland Public Ethics Law;

---

[3] The petition requested that we answer the following questions, which we consolidated and rephrased into one question:

1. Whether Commissioner McConkey's vote to enact the Comprehensive Plan was ultra vires where he voted in violation of the Calvert County Ethics Ordinance, and where that vote was the deciding vote.

2. Whether the Calvert County Ethics Ordinance includes an implied cause of action for citizens with standing.

[4] Md. Code (2019 Repl. Vol., 2022 Supp.), General Provisions ("GP"), Title 5.

2

and the legislative requirements set forth in Title 3 of the Land Use Article,[5] which mandate that local governments having planning and zoning authority adopt a comprehensive plan.

### State Law Requirements for the Establishment of Local Public Ethics Laws

The General Assembly has enacted a comprehensive State ethics law, the Maryland Public Ethics Law, which is codified in Maryland Code, Title 5 of the General Provisions ("GP") Article. The substantive provisions of that law cover three areas—conflicts of interest (subtitle 5), financial disclosure (subtitle 6), and lobbying (subtitle 7). *Seipp v. Balt. City Bd. of Elections*, 377 Md. 362, 364–65 (2003). These "provisions apply to officials and employees of the State government and to persons who engage in lobbying activities with the legislative or executive branches of the State government." *Id.* at 365. Administration of the law is vested in the State Ethics Commission, which is created and provided for in subtitle 2. As this Court explained in *Seipp*, "[m]any of the substantive provisions in those subtitles deal specifically with or have particular relevance to State agencies and to people who do business with State agencies, thus making their direct application to local governments and officials impractical." *Id.* That said, "[t]he General Assembly clearly desired that local officials and employees be subject to a comparable code[.]" *Id.* Instead of attempting to legislate a single code of ethics, or separate codes, for the wide variety of county and municipal officials, the Legislature opted to mandate that: (1) each local government enact a local public ethics law to govern the public ethics of local officials relating to conflicts of interest, financial disclosures, and lobbying; and

---

[5] Md. Code (2012 Repl. Vol., 2022 Supp.), Land Use ("LU"), Title 3.

(2) the local legislation be similar to the State requirements. *Id.*; GP §§ 5-807–5-810.

GP § 5-807(a) sets forth the general requirement that each county and municipal corporation "enact provisions to govern the public ethics of local officials relating to: (1) conflicts of interest; (2) financial disclosure; and (3) lobbying." With respect to conflicts of interest provisions, State law requires that the local ethics law be "similar to the provisions of Subtitle 5" of the Maryland Public Ethics Law, but the local law "may be modified to the extent necessary to make the provisions relevant to the prevention of conflicts of interest in that jurisdiction." GP § 5-808(a).

The General Assembly has delegated to the State Ethics Commission the authority to promulgate regulations and perform oversight of local jurisdictions to ensure that local public ethics laws are consistent with the Maryland Public Ethics Law. GP §§ 5-205, 5-206, 5-812. Specifically, the State Ethics Commission is required to "adopt by regulation model provisions for local governments" on conflicts of interest, financial disclosure, and regulation of lobbying. GP § 5-205(b)(1). Consistent with this legislative directive, the State Ethics Commission has created two "model local ethics laws"—one as a guide for larger counties and municipalities, and another for smaller counties and municipalities. COMAR 19A.04.04.01–.02. These model local ethics laws serve as a template for local legislation—enabling the legislative body to enact a modified version of the model law that addresses the needs of the particular jurisdiction, while at the same time ensuring that it is "similar to" the Maryland Public Ethics Law. The model local ethics laws contemplate that the local public ethics law will be enforced at the local level by a local ethics commission established for that

4

purpose.  COMAR 19A.04 Appendices A and B.  Ultimately, each jurisdiction is required to submit its local public ethics law to the State Public Ethics Commission for its review and approval, thereby ensuring that all local governments comply with the requirements under State law.  COMAR 19A.04.03.02B.

### *Calvert County Ethics Ordinance*

Calvert County's local public ethics law is codified as Chapter 41 of the Calvert County Code ("Calvert County Ethics Code" or "CCC").  The Calvert County Ethics Code is, for the most part, substantially the same as the model local ethics laws contained in the regulations promulgated by the State Ethics Commission, except for formatting and nomenclature changes to make it consistent with the County's particular local government structure.  Among other things, the Calvert County Ethics Code: (1) describes the individuals who are subject to its provisions; (2) sets forth conflict of interest, financial disclosure, and lobbying requirements; and (3) establishes the Calvert County Ethics Commission ("Ethics Commission"), including its powers and duties.

The Calvert County Ethics Code establishes a process for the investigation and enforcement of complaints alleging a violation of its provisions.  Specifically, a complainant who believes that an individual has violated the Calvert County Ethics Code may file a complaint with the Ethics Commission.  CCC § 41-12.A.  The Ethics Commission has the authority to investigate the complaint and to conduct an adjudicatory hearing to determine whether a violation has occurred.  CCC § 41-12.C.  The Code describes the Ethics Commission's enforcement authority as follows:

Based upon the evidence submitted to the Commission, the Commission has

5

the authority to do one or more of the following:

(1)     Dismiss the complaint;

(2)     Issue a cease-and-desist order and/or a recommendation for corrective action;

(3)     Issue a reprimand or censure;

(4)     Recommend disciplinary action; and

(5)     Make written findings of fact and conclusions based on the evidence. The Commission shall send its written findings to the complainant and the respondent. An ethics violation does not exist until a determination of a violation is made by the Commission.

CCC § 41-12.G. In addition, if the Ethics Commission finds, when considering a complaint, "that there are reasonable grounds to believe that the respondent may have committed a criminal offense, the Commission shall promptly refer the matter to an appropriate prosecuting authority." CCC § 41-12.I. A person who is the subject of a decision or action by the Commission "may seek judicial review of that decision in the Circuit Court for Calvert County in the manner prescribed by" Maryland Rule 7-201, *et seq.* CCC § 41-12.J.

The ethics violation that forms the basis for Dzurec's complaint in this case arises from the County Commissioners' adoption of the Calvert County Comprehensive Plan. We turn next to the provisions of State law that govern a local government's adoption of a comprehensive plan.

### *State Law Requirements for the Adoption of a Comprehensive Plan*

In Maryland, counties and municipal corporations having planning and zoning authority are required to adopt a "comprehensive plan." Md. Code (2012 Repl. Vol., 2022

6

Supp.), Land Use ("LU") §§ 1-405, 3-101. "Plans are developed to guide the implementation of land use controls and zoning in a rational way that is beneficial to the public." *County Council of Prince George's County v. Zimmer Dev. Co.*, 444 Md. 490, 520 (2015) (citations omitted). A comprehensive plan generally applies to a substantial area and is the product of years of long study and public input. *Id.* at 520–21. Under State law, the comprehensive plan must include certain elements, including community facilities, land use, sensitive areas, water resources, and transportation elements. *See* LU §§ 1-406(a), 3-102(a). The preparation of a comprehensive plan is undertaken by the planning commission of the local jurisdiction and presented to the local legislature for adoption. *See* LU §§ 1-406(a)(1), 1-415(b), 3-102(a), 3-202(a). The legislative body is required to adopt a comprehensive plan by legislative act. Once a local jurisdiction adopts a comprehensive plan, it may then adopt zoning, development, and subdivision regulations to implement the plan. *See* LU §§ 1-415(b), 3-303(b). The local jurisdiction is also required to review its comprehensive plan "[a]t least once every 10 years . . . and, if necessary, revise or amend" the plan to ensure that it includes the elements and visions required under State law. LU §§ 1-416(a), 3-301(a).

As we will discuss below, Dzurec contends that the County Commissioners' adoption of the Calvert County Comprehensive Plan violated the Calvert County Ethics Code and sought a judicial declaration from the circuit court that its adoption was *ultra vires* and therefore void.

7

## II

## Factual Background

*Adoption of the Calvert County Comprehensive Plan*

In 2015, the Calvert County Planning Commission ("Planning Commission") determined that it was necessary to update the existing Calvert County Comprehensive Plan. Over the course of several years, the Planning Commission held public meetings and workshops, and obtained input from the public, adjoining jurisdictions, and state and local governmental agencies. During these meetings, there was considerable discussion concerning the County's "Town Centers"—or primary designated growth areas.[6] One such designated growth area, known as the "Huntingtown Town Center," was the subject of discussion and debate.

On April 4, 2019, the Planning Commission adopted a resolution forwarding a new draft of the Calvert County Comprehensive Plan to the County Commissioners. In connection with the preparation of the draft Comprehensive Plan, the Planning

---

[6] The Calvert County Comprehensive Plan describes "Town Centers" as the "county's primary designated growth areas" and as "areas where [transferable development rights] can be used to increase density to a maximum consistent with the approved Town Center zoning." The Comprehensive Plan further states that Town Centers

> are the focus of the county's commercial and employment activities. These places are designated for the higher intensity and greater variety of commercial and residential development within the plan boundaries. . . . Directing commercial, retail, and housing development to Town Centers is a central element in strengthening economic vitality in Calvert County and an important counterpart to policies designed to preserve the county's rural land.

In addition, Town Centers are designated as Priority Funding Areas for state funding purposes related to public infrastructure.

Commission presented the County Commissioners with two options regarding a potential expansion of the Huntingtown Town Center, which were described as "Option A" and "Option B." Under Option A, the Huntingtown Town Center would be expanded from its current boundaries to include Huntingtown High School. Under Option B, the Huntingtown Town Center would be expanded to include not only the high school, but also additional properties adjacent to Cox Road along Route 2 and Route 4, consisting of approximately one-fourth of a square mile of additional land. Commissioner McConkey owned real property in the area encompassed by Option B.

The County Commissioners conducted public hearings on the Comprehensive Plan in June and July 2019. At a meeting on June 25, 2019, the Commissioners discussed the Plan, including the two options for the expansion of the Huntingtown Town Center. The Commissioners voted on a motion to adopt and incorporate Option B into the draft Comprehensive Plan. Commissioner McConkey abstained. The remaining Commissioners were equally divided: two voted in favor, and two voted against. The motion failed, and Commissioners tabled the matter for further discussion.

The Commissioners considered Option B once again on August 6, 2019. Commissioner McConkey voted in favor of it. The motion to adopt Option B passed by a 3-2 vote. At the same hearing, the Commissioners voted on Ordinance 24-19—the legislation to adopt the Comprehensive Plan that included Option B. The motion to adopt the Plan passed by a 3-2 vote.

***Proceedings Before the Calvert County Ethics Commission***

After the County Commissioners voted to adopt the Comprehensive Plan, the Calvert County Ethics Commission received two complaints from citizens alleging that Commissioner McConkey violated the conflicts of interest provisions of the Calvert County Ethics Code by participating in the Commissioners' August 6 vote to adopt and incorporate Option B into the draft Comprehensive Plan.

The Ethics Commission scheduled an administrative proceeding to consider the alleged violations. Commissioner McConkey moved to recuse Jennifer Mazur, one of the Ethics Commission members, from participating in the proceeding. The Ethics Commission determined that Ms. Mazur was not required to recuse herself.

After an administrative hearing on the matters contained in the complaints, the Ethics Commission found that Commissioner McConkey violated the conflicts of interest provisions of the Calvert County Ethics Code by voting on Option B and the Comprehensive Plan. The Ethics Commission prepared written findings of fact and conclusions, and a letter titled "Letter of Censure and Cease and Desist," dated December 15, 2020. The Ethics Commission determined that Commissioner McConkey "improperly participated in a matter in which [he] ha[d] an economic interest or, alternatively, which would have a direct or indirect impact on [him], as distinguished from the public generally." The Ethics Commission further concluded that Commissioner McConkey was not "required by law to act" in the matter, which would permit him to participate pursuant

10

to CCC § 41-13.A(2)(b) despite the conflict.[7]  Based upon its finding of the violation of the Calvert County Ethics Code, the December 15 letter advised Commissioner McConkey that the Ethics Commission

> hereby issues this **LETTER OF CENSURE** and orders you to **CEASE AND DESIST** from any further violations of Section 41-13.  Pursuant to Section 41-22, should you violate this Cease and Desist order, the Ethics Commission will seek enforcement of the order in the Circuit Court to include a fine or civil penalty of up to $2,500 per violation, as well as other injunctive relief.

The Ethics Commission advised Commissioner McConkey of his right to appeal its decision to the Circuit Court for Calvert County in the manner prescribed by Maryland Rule 7-201, *et seq.*

Thereafter, Commissioner McConkey only sought judicial review of the Ethics Commission's conclusion that its member, Ms. Mazur, was not required to recuse herself from participating in the administrative proceeding.  Commissioner McConkey did not petition for judicial review of the Ethics Commission's determination that his vote on

---

[7] CCC § 41-13.A(2) permits a person to participate in a matter in certain circumstances where the person would be otherwise disqualified because of a conflict of interest if:

    (a)    The disqualification leaves a body with less than a quorum capable of acting within a reasonable time;

    (b)    The disqualified elected official . . . is required by law to act; or

    (c)    The disqualified elected official . . . is the only person authorized to act.

Option B and the Comprehensive Plan violated the conflicts of interest provisions of the Calvert County Ethics Code.[8]

## III

### Procedural History

In December 2019, Dzurec filed a complaint against the County. Thereafter, Dzurec filed a "Second Amended Complaint for Declaratory Judgment," which is the operative complaint. The complaint alleges that: (1) Commissioner McConkey's action in voting for Option B and the Comprehensive Plan violated the County's ethics law[9] because he had a material interest in the inclusion of the Huntingtown Town Center expansion; (2) Commissioner McConkey's vote in violation of the County's ethics law is therefore illegal; and (3) Commissioner McConkey's vote provided the necessary majority for

---

[8] During the pendency of this matter, the Appellate Court of Maryland issued its decision in *In re McConkey*, No. 0954, Sept. Term, 2021, 2022 WL 3446226 (Aug. 17, 2022). The Appellate Court determined that the Ethics Commission correctly concluded that Ms. Mazur was not required to recuse herself, reversed the circuit court's determination that her recusal was required, and affirmed the decision of the Ethics Commission. *Id.* at *8–9. This Court denied Commissioner McConkey's petition for writ of *certiorari* on December 19, 2022.

[9] Dzurec alleges that Commissioner McConkey's action in voting for Option B and the Comprehensive Plan violated both the Maryland Public Ethics Law, as well as the Calvert County Ethics Code. As discussed *supra*, the substantive provisions of the Maryland Public Ethics Law do not apply to local government officials. Instead, local governments are required to adopt their own local ethics laws. *See* GP § 5-807(a).

Additionally, as discussed herein, Commissioner McConkey did not seek judicial review of the Ethics Commission's determination that his participation in the legislative matters that were the subject to the ethics complaint violated the conflicts of interest provisions of the Calvert County Ethics Code. Given that there was no appeal of that issue, the Ethics Commission's determination is a final decision.

12

passage of the Comprehensive Plan, "and therefore the Plan would not have been enacted into law but for this refusal to recuse himself." On this basis, Dzurec sought a "declaration that the Calvert County Comprehensive Plan was illegally passed because its deciding voter should have recused himself, and it is therefore void."[10]

In December 2020, the County filed a motion for summary judgment. After a hearing, the circuit court entered an order under the Maryland Uniform Declaratory Judgments Act, Md. Code (2020 Repl. Vol., 2022 Supp.), Courts and Judicial Proceedings ("CJ") § 3-401, *et seq.*, declaring, in pertinent part, that the adoption of the Comprehensive Plan "was legally passed and implemented" and denied Dzurec's requested declaratory relief. Separately, the circuit court entered an order ruling that there was no dispute of material fact and that the County was entitled to judgment as a matter of law. Dzurec filed an appeal to the Appellate Court of Maryland.

On appeal, the Appellate Court considered whether the circuit court erred in determining that the Commissioners legally adopted the Comprehensive Plan despite Commissioner McConkey's conflict of interest. *Dzurec v. Bd. of County Comm'rs*, No. 29, Sept. Term, 2021, 2021 WL 6111666 (Dec. 27, 2021). Before that court, Dzurec argued that the Calvert County Ethics Code gives her an implied right of action to seek relief in the form of a declaration that the Comprehensive Plan was void because Commissioner

---

[10] The complaint also included a second count seeking a declaration that the Comprehensive Plan "was illegally implemented because the [Commissioners] did not conform to the requirements of Maryland law regarding notice, amendments, or timely conveyance of the draft plans to state authorities." The circuit court granted summary judgment in favor of the County, and no appeal was taken from that decision with respect to this count.

13

McConkey's act in voting for the Plan, given his conflict of interest, constituted an *ultra vires* act. She asserted that, because the proper remedy under this private right of action was for the circuit court to invalidate any legislation that was passed, the circuit court erred in failing to invalidate the Comprehensive Plan.

The intermediate appellate court rejected Dzurec's argument and affirmed the circuit court's judgment. It held that the Calvert County Ethics Code does not create an implied private right of action and that, under the common law, the Comprehensive Plan was not void because a conflict of interest does not make a legislative act *ultra vires*. *Dzurec*, 2021 WL 6111666 at *4-6. As discussed below, we agree with the Appellate Court and affirm the circuit court's judgment.

**IV**

**Discussion**

On a review of an order granting summary judgment, we begin our analysis with a "determination of whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law." *D'Aoust v. Diamond*, 424 Md. 549, 574 (2012) (cleaned up). "If no genuine dispute of material fact exists, this Court determines whether the circuit court correctly entered summary judgment as a matter of law." *Koste v. Town of Oxford*, 431 Md. 14, 25 (2013) (cleaned up). "Thus, the standard of review of a trial court's grant of a motion for summary judgment on the law is *de novo*, that is, whether the trial court's legal conclusions were legally correct." *Id.* (cleaned up).

There are no disputes of material fact present in this case. Rather, the parties' disagreement revolves solely around a question of law—whether Dzurec may seek relief

14

in the form of a declaratory judgment invalidating the County Commissioners' legislative enactment of the Comprehensive Plan where a Commissioner's action in voting for the Plan violated the conflicts of interest provisions of the Calvert County Ethics Code. Accordingly, our review is *de novo*. *See Schisler v. State*, 394 Md. 519, 535 (2006) (where "the question before the Court involves the interpretation and application of Maryland constitutional, statutory and case law," we review the case under a *de novo* standard of review).

Dzurec contends that she has a right to seek her requested relief on two grounds. First, she contends that she has taxpayer standing to maintain a common law action to challenge Commissioner McConkey's act in voting to adopt the Plan in violation of the Calvert County Ethics Code. She points out that "[t]he common law taxpayer standing doctrine permits taxpayers to seek the aid of courts . . . to enjoin illegal and *ultra vires* acts of public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayer." *See State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 538 (2014). She asserts that the common law taxpayer standing doctrine permits her to seek relief in the form of a judicial declaration that the Board's adoption of the Comprehensive Plan is void because Commissioner McConkey's vote was in violation of the conflicts of interest provisions of the County Ethics Code and is therefore *ultra vires*. Second, she asserts that the Calvert County Ethics Code establishes an implied right of action by local law that entitles her to the same remedy—a judicial declaration that the Comprehensive Plan is void because of Commissioner McConkey's conflict of interest.

15

For its part, the County asserts that the judicial remedy sought by Dzurec, whether arising under a common law action, or an implied right of action created by local law, is inconsistent with this Court's holdings in *Sugarloaf Citizens Association, Inc. v. Gudis*, 319 Md. 558 (1990), and *Kenwood Gardens Condominiums, Inc. v. Whalen Properties*, 449 Md. 313 (2016). The County argues that our case law clearly establishes that a court will not invalidate legislative action based upon an assertion of a Commissioner's conflict of interest because such a judicial determination would violate the common law rule against inquiry into legislative motivation, and also implicates separation of powers concerns under Article 8 of the Declaration of Rights.[11]

For the reasons discussed below, we agree with the County and hold that Dzurec is not entitled to the declaratory relief she seeks. Under Maryland common law, ordinarily courts will not consider the motives of legislators or public officials when undertaking purely legislative acts. The common law principle—that a court will not review legislative action for bias or conflicts of interest—stems from separation of powers principles arising under Article 8 of the Declaration of Rights. Concerning Dzurec's assertion that the County Commissioners created an implied right of action, assuming, without deciding, that the County Commissioners had the legal authority to establish such a right, there is no evidence that the County Commissioners intended to create such a private cause of action.

---

[11] Article 8 of the Maryland Declaration of Rights states:

[T]he Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

16

*The Declaratory Relief Sought by Dzurec Is Not Permitted Under Maryland Common Law*

In the *Sugarloaf* and *Kenwood Gardens* cases, this Court considered issues similar to the issue here—namely, whether the petitioners in those cases were entitled to a judicial declaration invalidating legislative acts undertaken by the county legislative body based on allegations that a particular councilmember had a conflict of interest concerning the subject matter of the legislative act.

In *Sugarloaf*, this Court was asked to invalidate a legislative act of the Montgomery County Council that selected a particular site for the construction of a solid waste mass-burn facility. 319 Md. at 561–63. Petitioners, the Sugarloaf Citizens Association, Inc., and two Montgomery County taxpayers (collectively, "Sugarloaf") sued the County Council and one of its councilmembers, Councilman Gudis, in circuit court, asking the court to "void the action of the Council" in approving the site and in adopting the resolution. *Id.* at 563. Sugarloaf contended that Gudis had a "financial interest" by virtue of his stockholdings in the company that owned the site, and that his vote—which was the deciding vote cast on the legislative resolution—violated the Montgomery County Ethics Code. *Id.* at 566. In support of its requested remedy, Sugarloaf relied on a provision in the Montgomery County Ethics Code—Section 19A-22(b)—which permitted a court to

> void an official action taken by an official or employee with a conflict of interest prohibited by [the Montgomery County ethics law] when the action arose from or concerned the subject matter of the conflict . . . *if the court deems voiding the action to be in the best . . . interest of the public*.

*Id.* at 568 (emphasis added in *Sugarloaf*).

17

The circuit court granted the County's motion to dismiss. After the intermediate appellate court affirmed the judgment of the circuit court, we considered whether the circuit court erred in granting the County's motion. We determined that Sugarloaf was not entitled to the relief sought in the complaint and affirmed the judgment of the circuit court.

In considering this question, we assumed that Sugarloaf had common law standing to bring the action. *Sugarloaf*, 319 Md. at 568. We held that the provision of the Montgomery County Ethics Law, § 19A-22(b)—which purported to authorize a court to void an official action by a public official with a prohibited conflict of interest "if the court deems voiding the action to be in the best . . . interest of the public"—was unconstitutional. *Id.* We determined that the Montgomery County Code provision "impermissibly attempts to vest in the court a nonjudicial power" in violation of Article 8 of the Maryland Declaration of Rights. *Id.* We observed that "[c]ourts can invalidate legislation on grounds of unconstitutionality[,]" and that "[c]ertain local action may be invalidated if the enacting body failed to comply with enabling legislation requirements or otherwise acted *ultra vires*." *Id.* at 568–69 (citations omitted). We explained, however, that courts cannot invalidate legislation "because a judge thinks that to void the legislation is in some fashion in the best interest of the public. To permit a court to act on that basis is to permit it to perform a nonjudicial function." *Id.* at 569 (cleaned up). We stated that, under our case law, "that sort of unguided discretion, involving, as it does, questions of policy and expediency, is legislative, not judicial, discretion. It is the sort of discretion that may not, consistent with Article 8 of the Declaration of Rights, be vested in a court." *Id.* at 572. Accordingly, we held that Section 19A-22(b) was

18

unconstitutional,[12] but that it was severable from the remainder of the Montgomery County Ethics Code. *Id.* at 573.

Our analysis did not end there. We proceeded to determine whether, in the absence of the unconstitutional code provision, Sugarloaf would nonetheless be entitled under the common law to the remedy sought—namely, a court order striking down legislative action if the Court assumed that Gudis's vote violated the conflicts of interest provisions of the Montgomery County Ethics Law. *Sugarloaf*, 319 Md. at 577. We stated that "[w]hile we have assumed that Sugarloaf has Maryland common law standing to bring this action, there is ordinarily no common law remedy that permits invalidation of legislative action because of a legislator's improper motivation. *Courts usually do not inquire into legislative motivation as a basis for setting aside legislation*." *Id.* (emphasis added).

We revisited these principles in *Kenwood Gardens*. In that case, an adjacent property owner challenged the Baltimore County Council's vote on a planned unit development ("PUD") application because the property owner alleged that the developer

---

[12] We note that the language in the Montgomery County Code that was held to be unconstitutional in *Sugarloaf* is identical to the language that remains in the current model ethics laws that are set forth in COMAR 19A.04 Appendices A and B. *See* Model Ethics Law A, § 9(b)(2)(i)(B) permitting a court to

> void an official action taken by an official or an employee with a conflict of interest . . . when the action arises from or concerns the subject matter of the conflict . . . if the court deems voiding the action to be in the best interest of the public.

*See also* Model Ethics Law B § 9(c)(2)(i)(B) (same). The State Ethics Commission may want to revise its model ethics laws to conform them to this Court's holding in *Sugarloaf* to ensure that local governments, when drafting local ordinances or amendments thereto, do not rely upon a provision that this Court has held to be unconstitutional.

19

had made campaign contributions to the county councilman who introduced and ultimately voted to adopt the resolution that approved the PUD. *Kenwood Gardens*, 449 Md. at 318–20. We were asked to determine whether the alleged appearance of impropriety arising from illegal campaign contributions operated to invalidate the resolution. *Id.* at 324.

We first determined that the introduction and passage of the legislation approving the PUD constituted a legislative act, rather than a quasi-judicial one. *Id.* at 332–38. Having made this determination, we noted that "legislative or quasi-legislative decisions of local legislative bodies are not subject to ordinary judicial review; instead that they are subject to very limited review by the courts." *Id.* at 338 (cleaned up). We stated that "judicial scrutiny of legislative action under the court's ordinary jurisdiction 'is limited to assessing whether a government body was acting within its legal boundaries.'" *Id.* (quoting *Talbot County v. Miles Point Prop., LLC*, 415 Md. 372, 393 (2010)) (cleaned up). We "decline[d] to apply the conflicts of interest review" urged by the adjacent property owner and used by a minority of states. *Id.* at 341 (cleaned up). We noted that under Maryland law, "'when the judiciary reviews a statute or other governmental enactment, either for validity or to determine the legal effect of the enactment in a particular situation, the judiciary is ordinarily not concerned with whatever may have motivated the legislative body or other governmental actor.'" *Id.* (quoting *Workers' Comp. Comm'n v. Driver*, 336 Md. 105, 118 (1994)). We observed that one commentator has explained that:

> Judge-made "appearance of fairness" doctrines and special due process standards governing conflicts of interest and bias in adjudicative zoning proceedings generally are not applied to members of a legislative body when engaged in purely legislative zoning actions. The judicial reluctance to review legislative action for bias or conflicts of interest, stems from a concern

20

for the separation of powers and manifests itself in the traditional rule that a court will not inquire into legislators' motives.

*Id.* at 342 (quoting 2 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 32:15 (4th ed. rev. 1994)).

We concluded that the introduction and passage of the resolution were legislative actions, and the motivation behind the votes was "not subject to review for the appearance of impropriety." *Kenwood Gardens*, 449 Md. at 344. Accordingly, we held that the alleged appearance of impropriety generated by the councilman's action in introducing and voting on the resolution to approve the PUD did not invalidate his or the Council's legislative actions. *Id.*

Turning to Dzurec's complaint filed in this matter, for the reasons articulated by this Court in *Sugarloaf* and *Kenwood Gardens*, we similarly conclude that she is not entitled to the relief she seeks—a judicial "declaration that the Calvert County Comprehensive Plan was illegally passed because its deciding voter should have recused himself, and it is therefore void." In order to explain our reasoning—like the petitioner in *Sugarloaf*—we will assume that Dzurec has standing to bring a common law action.

It is undisputed that the County Commissioners' actions in voting to adopt Option B, and the resolution adopting the Comprehensive Plan, were legislative acts. The sole basis for Dzurec's requested declaratory relief arises from Commissioner McConkey's vote on legislative matters where he had a conflict of interest. As discussed in the *Sugarloaf* and *Kenwood Gardens* cases, a petitioner may not ordinarily seek relief from the courts in the form a judicial declaration that a legislative act is void or invalid based

21

upon the motives of a public official, such as whether the official had a conflict of interest, when undertaking purely legislative acts. *Sugarloaf*, 319 Md. at 577 ("[T]here is ordinarily no common law remedy that permits invalidation of legislative action because of a legislator's improper motivation. Courts usually do not inquire into legislative motivation as a basis for setting aside legislation." (citations omitted)); *Kenwood Gardens*, 499 Md. at 341 (declining to apply a conflict of interest review in connection with legislative acts used by a minority of states because those cases are inconsistent with Maryland law). The Maryland common law principle—that a court ordinarily[13] will not review legislative action for bias or conflicts of interest—stems from separation of powers principles arising under Article 8 of the Declaration of Rights. Simply put, we observe no daylight between the remedy sought by Dzurec in this case and the remedies sought by petitioners in *Sugarloaf* and *Kenwood Gardens*, which we rejected as being inconsistent with Maryland common law. At bottom, Dzurec is seeking the same relief as the relief sought by the petitioners in *Sugarloaf* and *Kenwood Gardens*—a judicial declaration that the Calvert County Comprehensive Plan is void because one of the Commissioners may have been motivated by self-interest when casting his vote in favor

---

[13] In *Sugarloaf*, we stated that courts "*usually* do not" inquire into legislative motivation, and that there is "*ordinarily* no common law remedy that permits invalidation of legislative action because of a legislator's motivation." 319 Md. at 577 (emphasis added). Although we will not say that a court would never review a public official's motivation in matters involving legislative action, we determine that there is no reason to deviate from the general common law rule in this case, particularly given the separation of powers concerns that are the foundation of the common law principle.

of the legislation. Under the common law, the judiciary ordinarily will not void legislation based upon what it perceives is improper legislative motivation.

Dzurec argues that her cause of action is different from that of the petitioners in *Sugarloaf* because she has filed her action pursuant to the common law taxpayer standing doctrine, which permits her to seek the authority of the court "to enjoin illegal and *ultra vires* acts of public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayer." *State Ctr., LLC*, 438 Md. at 538 (citation omitted); *see also Inlet Assocs. v. Assateague House Condo. Ass'n*, 313 Md. 413, 440–41 (1988). Dzurec asserts that Commissioner McConkey's participation in the Commission's vote on the Comprehensive Plan was *ultra vires*. We disagree.

To be sure, a court may invalidate local legislation if the local government did not comply with the enabling legislation requirements or acted *ultra vires*. *Sugarloaf*, 319 Md. at 569 (citing *Walker v. Talbot County*, 208 Md. 72, 86 (1955)). An act is *ultra vires* when it is "beyond the scope of power allowed or granted . . . by law." *Ultra Vires*, Black's Law Dictionary (11th ed. 2019). However, Dzurec's claim does not fall within the type of cases where this Court has invalidated a legislative act because the local official or body acted *ultra vires* by exceeding the scope of authority authorized by statute or charter. *See, e.g.*, *K. Hovnanian Homes of Md., LLC v. Mayor and City Council of Havre de Grace*, 472 Md. 267, 305–06 (2021) (invalidating a recoupment agreement on the basis that it was not adopted by an ordinance of the city as required by State law and was, therefore, *ultra vires* and unenforceable against the city); *River Walk Apartments, LLC v. Twigg*, 396 Md. 527, 548–49 (2007) (holding that an agreement signed only by the mayor and not authorized by

23

the legislative body was *ultra vires* and unenforceable against the city where the enabling statute required legislative authorization); *Inlet Assocs.*, 313 Md. at 432–34 (invalidating a city's action in entering into contracts for the transfer of property interests where the applicable statute required the adoption of an ordinance, rather than a resolution).  In such cases, the legislative act in question was undertaken in a manner inconsistent with the authority granted by the enabling statute.

Here, there is no assertion before this Court[14] that the adoption of the Comprehensive Plan was inconsistent with the requirements of the Land Use Article or a procedural requirement under the County Charter or Code for the adoption of a legislative act of the County Commissioners.  Rather, Dzurec's sole basis for seeking judicial relief arises from Commissioner McConkey's conflict of interest and his action in casting votes on the legislative matters which concerned the subject matter of the conflict.  We have found no cases in which this Court has held that participation in a legislative matter where a conflict of interest is determined to exist constitutes an *ultra vires* act, which would permit a court to void it.  To the contrary, such a holding would be directly at odds with this Court's holdings in *Sugarloaf* and *Kenwood Gardens*.

---

[14] As discussed *supra*, Dzurec's complaint included a second count asking the circuit court to declare that the Comprehensive Plan was void because the County did not adopt it pursuant to the requirements under the Land Use Article.  After the court's entry of summary judgment in favor of the County on all counts, Dzurec did not challenge the entry of summary judgment on that count, and it is not before us.

***Dzurec Has No Implied Right of Action Under the Calvert County Ethics Code***

We are similarly unpersuaded by Dzurec's argument that she has an implied right

of action under the Calvert County Ethics Code that would entitle her to seek and obtain a

declaratory judgment that invalidates the Calvert County Comprehensive Plan.

First, assuming, for purposes of discussion, that Calvert County has the authority to

enact a local law that modifies the common law to create such a such a judicial remedy,[15]

we find that there is no such intention expressed here. As our case law clearly establishes,

a "'private cause of action in favor of a particular plaintiff or class of plaintiffs does not

exist simply because a claim is framed that a statute was violated and a plaintiff or class of

plaintiffs was harmed by it.'" *Aleti v. Metro. Balt., LLC*, 479 Md. 696, 723 (2022) (quoting

---

[15] As we recently reiterated in *Aleti v. Metropolitan Baltimore, LLC*, "the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to modify the common law of this State." 479 Md. 696, 718 (2022) (quoting *McCrory Corp. v. Fowler*, 319 Md. 12, 20 (1990), *superseded by statute as stated in Wash. Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 627–29 (2010)). "Indeed, a local government . . . which derives its authority from the Home Rule Amendment, Article XI-A of the Maryland Constitution, may establish a judicial cause of action pursuant to a local law on a matter of purely local concern, *only* where the General Assembly gives a local government the authority to do so pursuant to the express powers granted to the local government." *Id.* (emphasis in original) (citation omitted).

In *Sugarloaf*, we determined that the issue of whether Section 19A-22(b) of the Montgomery County Ethics Law created "an implied or express private cause of action [was] not critical to our decision and [was] a question we d[id] not address." 319 Md. at 566–67. Nor did "we consider whether a chartered county may constitutionally create a cause of action of the sort arguably involved here." *Id.* at 567 n.5 (citing *McCrory Corp.*, 319 Md. at 24). That said, we held that § 19A-22(b) was unconstitutional because the General Assembly could not transfer powers to a charter county, pursuant to Article XI-A, that it did not possess. *Id.* at 573. We determined that "[s]ince the General Assembly cannot confer nonjudicial powers on a court, neither can a chartered county[, and] [a]s a consequence, § 19A-22(b) is unconstitutional." *Id.*

25

*Baker v. Montgomery County*, 427 Md. 691, 708–09 (2012)). "Rather, the issue is a matter of statutory construction." *Baker*, 427 Md. at 709 (citations omitted). "In determining whether a state statute contains an implied private right of action, we have adopted the same test applied to federal statutes by the Supreme Court" as articulated in *Cort v. Ash*, 422 U.S. 66, 78 (1975). *Aleti*, 479 Md. at 723–24 (citations omitted). That test requires that we consider the following relevant factors:

> (1)    Is the plaintiff one of the class for whose special benefit the statute was enacted?
>
> (2)    Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
>
> (3)    Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Id.* at 724 (citations omitted).

Focusing on the second factor,[16] Dzurec argues that the preamble of the Calvert County Ethics Code demonstrates the County Commissioners' legislative intent to create an implied right of action that would permit a taxpayer to obtain a remedy in the form of a judicial declaration invalidating a legislative enactment in circumstances in which a Commissioner's vote on a legislative action violates the conflicts of interest provisions contained in the County Ethics Code. We disagree.

As discussed above, aside from stylistic and formatting differences, the Calvert County Ethics Code is substantially the same as the model local ethics laws created by the

---

[16] In *Baker v. Montgomery County*, 427 Md. 691, 710 (2012), we noted that "[t]he central inquiry remains whether the [legislative body] intended to create, either expressly, or by implication, a private [right] of action."

26

State Ethics Commission pursuant to its rulemaking authority. Moreover, the language in the preamble in the Calvert County Ethics Code is the same as the language in the General Assembly's legislative findings in the Maryland Public Ethics Law (*see* GP § 5-102), the preamble of the Montgomery Ethics Code as discussed in *Sugarloaf* (*see* Montgomery County Code § 19A-2), and the model ethics laws established by the State Ethics Commission (*see* COMAR 19.A.04 Appendix A). The preambles contained in the above-referenced statute, local laws, and regulations of each state, with minor variations, that the "people have a right to be assured that the impartiality and independent judgment of public officials and employees will be maintained" and that the applicable law should be "liberally construed." *Id.* In other words, there is no unique language in the Calvert County Ethics Code that evidences an intent on the part of the County Commissioners to create an implied right of action that authorizes taxpayers to obtain a judicial remedy invalidating a legislative enactment based upon a Commissioner's participation in the matter where it is determined that the Commissioner had a conflict of interest. Moreover, Dzurec has not directed us to any legislative history to support her claim that the County Commissioners intended to create such a private right of action. Indeed, as noted above, the provisions of the Calvert County Ethics Code are substantially similar to the model ethics laws established by the State Ethics Commission.[17]

---

[17] Given the lack of any legislative intent by the County Commissioners to create such a private right of action in either the plain language of the Code or the legislative history, we do not consider the remaining *Cort v. Ash* factors. *See Baker*, 427 Md. at 710–11 (explaining that "[i]n a case in which neither the statute nor the legislative history reveals a [legislative] intent to create a private right of action for the benefit of the plaintiff, we need not carry the *Cort v. Ash* inquiry further").

# V

## Conclusion

For the reasons set forth above, we hold that the circuit court correctly entered summary judgment in favor of the County. The relief sought by Dzurec in her complaint—a declaratory judgment invalidating the Calvert County Comprehensive Plan based upon Commissioner McConkey's violation of the conflicts of interest provisions of the Calvert County Ethics Code—falls squarely within the common law principles articulated in *Sugarloaf* and *Kenwood Gardens*. Under Maryland common law, ordinarily courts will not consider the motives of legislators or public officials when they undertake purely legislative acts. The common law principle—that a court will not review legislative action for bias or conflicts of interest—stems from separation of powers concerns arising under Article 8 of the Declaration of Rights. As for Dzurec's assertion that the County Commissioners created an implied right of action—assuming, without deciding, that the County Commissioners had the legal authority to establish such a right—there is no evidence that the County Commissioners intended to create such a private right of action.

> **JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONERS, SUSAN DZUREC, MYRA GOWANS, MICHAEL KING, AND PHYLLIS SHERKUS.**